Manuel M. Soares
NAME
F-39579
PRISON NUMBER

P.O. Box 4000
CURRENT ADDRESS OR PLACE OF CONFINEMENT

Vacaville, CA. 95696-4000
CITY, STATE, ZIP CODE

**☐ORIGINAL**

**FILED**
JUL 16 2008
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

2254 ✓ 1983
FILING FEE PAID
Yes ___ No ___
IFP MOTION FILED
Yes ___ No ___
COPIES SENT TO
Court ___ Pro Se

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

MANUEL M. SOARES            ,
(FULL NAME OF PETITIONER)
                **PETITIONER**

v.

D.K. SISTO, WARDEN          ,
(NAME OF WARDEN, SUPERINTENDENT, JAILOR, OR AUTHORIZED
PERSON HAVING CUSTODY OF PETITIONER [E.G., DIRECTOR OF THE
CALIFORNIA DEPARTMENT OF CORRECTIONS])

                **RESPONDENT**
        and

_____ ,

The Attorney General of the State of
California, Additional Respondent.

Civil No    '08 CV 1288 JAH NLS
            (TO BE FILLED IN BY CLERK OF U.S. DISTRICT COURT)

**PETITION FOR WRIT OF HABEAS CORPUS**

UNDER 28 U.S.C. § 2254
BY A PERSON IN STATE CUSTODY

1. Name and location of the court that entered the judgment of conviction under attack: _____
   San Diego Superior Court, P.O. Box 122724, San Diego, CA. 92112-2724

2. Date of judgment of conviction: July 12, 2006

3. Trial court case number of the judgment of conviction being challenged: SCD193952

_____

4. Length of sentence: 19 yrs. 8 mon.

CIV 68 (Rev. Jan. 2006)                                    CV

5.  Sentence start date and projected release date: ___9/15/2006 to 2021___

___

6.  Offense(s) for which you were convicted or pleaded guilty (all counts): _____
    1) Spousal abuse; P.C. 273.5    3) Vandalism; P.C. 594(a)(b)(1)
    2) Burglary; P.C. 459/460    4) Attempted threats; P.C. 664/422

7.  What was your plea? (CHECK ONE)
    (a)  Not guilty          ☒
    (b)  Guilty             ☐
    (c)  Nolo contendere    ☐

8.  If you pleaded not guilty, what kind of trial did you have? (CHECK ONE)
    (a)  Jury          ☒
    (b)  Judge only    ☐

9.  Did you testify at the trial?
    ☒ Yes  ☐ No

## DIRECT APPEAL

10. Did you appeal from the judgment of conviction in the **California Court of Appeal**?
    ☒ Yes  ☐ No

11. If you appealed in the **California Court of Appeal**, answer the following:
    (a)  Result: ___Affirmed___
    (b)  Date of result (if known): ___8/24/07;___
    (c)  Case number and citation (if known): ___D049480___
    (d)  Names of Judges participating in case (if known)_____

    _____
    (e)  Grounds raised on direct appeal: ___1) Failure to give a requested jury
        instruction;  2) Trial court misunderstood its scope under
        section 1170.1;  3) Court imposed upper term sentence___

12. If you sought further direct review of the decision on appeal by the **California Supreme Court** (e.g., a Petition for Review), please answer the following:
    (a)  Result: ___Denied___
    (b)  Date of result (if known): ___11/14/07___
    (c)  Case number and citation (if known): ___S156802___

    _____
    (d)  Grounds raised: ___Court imposed upper term sentence___

    _____

CIV 68 (Rev. Jan. 2006)                    -2-                    cv

13. If you filed a petition for certiorari in the **United States Supreme Court**, please answer the following with respect to that petition:

    (a)  Result: _____ N/A _____

    (b)  Date of result (if known): _____

    (c)  Case number and citation (if known): _____

    _____

    (d)  Grounds raised: _____

    _____

    _____

    _____

## COLLATERAL REVIEW IN STATE COURT

14. Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications, or motions (e.g., a Petition for Writ of Habeas Corpus) with respect to this judgment in the **California Superior Court**?
  ☒ Yes  ☐ No

15. If your answer to #14 was "Yes," give the following information:

    (a)  **California Superior Court** Case Number (if known): HC15216 _____

    (b)  Nature of proceeding: __ Habeas Corpus Petition _____

    _____

    (c)  Grounds raised: __ Same as this petition _____

    _____

    _____

    _____

    (d)  Did you receive an evidentiary hearing on your petition, application or motion?
      ☐ Yes  ☒ No

    (e)  Result: __ Denied : _____

    (f)  Date of result (if known): __ 12/20/07    See Exhibit "F" _____

16. Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications, or motions (e.g., a Petition for Writ of Habeas Corpus) with respect to this judgment in the **California Court of Appeal**?
  ☒ Yes  ☐ No

CIV 68 (Rev. Jan. 2006)

cv

17. If your answer to #16 was "Yes," give the following information:

    (a) **California Court of Appeal** Case Number (if known): D052293

    (b) Nature of proceeding: Habeas Corpus

    (c) Names of Judges participating in case (if known)

    (d) Grounds raised: Same as this petition

    (e) Did you receive an evidentiary hearing on your petition, application or motion?
      ☐ Yes  ☒ No

    (f) Result: Denied

    (g) Date of result (if known): See Exhibit "F"

18. Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications, or motions (e.g., a Petition for Writ of Habeas Corpus) with respect to this judgment in the **California Supreme Court**?
☒ Yes  ☐ No

19. If your answer to #18 was "Yes," give the following information:

    (a) **California Supreme Court** Case Number (if known): S162806

    (b) Nature of proceeding: Habeas Corpus Petition for review

    (c) Grounds raised: Same as this petition

    (d) Did you receive an evidentiary hearing on your petition, application or motion?
      ☐ Yes  ☒ No

    (e) Result: Denied

    (f) Date of result (if known): See Exhibit "F"

20. If you did *not* file a petition, application or motion (e.g., a Petition for Review or a Petition for Writ of Habeas Corpus) with the **California Supreme Court**, containing the grounds raised in this federal Petition, explain briefly why you did not:

N/A
_____
_____
_____
_____

## COLLATERAL REVIEW IN FEDERAL COURT

21. Is this your **first** federal petition for writ of habeas corpus challenging this conviction?
    ☒ Yes ☐ No    (IF "YES" SKIP TO #22)
    (a) If no, in what federal court was the prior action filed? _____
     (i) What was the prior case number? _____
     (ii) Was the prior action (CHECK ONE):
        ☐ Denied on the merits?
        ☐ Dismissed for procedural reasons?
     (iii) Date of decision: _____
    (b) Were any of the issues in this current petition also raised in the prior federal petition?
        ☐ Yes ☐ No
    (c) If the prior case was denied on the merits, has the Ninth Circuit Court of Appeals given you permission to file this second or successive petition?
        ☐ Yes ☐ No

**CAUTION:**
- **Exhaustion of State Court Remedies:** In order to proceed in federal court you must ordinarily first exhaust your state court remedies as to each ground on which you request action by the federal court. This means that even if you have exhausted some grounds by raising them before the California Supreme Court, you must first present *all* other grounds to the California Supreme Court before raising them in your federal Petition.

- **Single Petition:** If you fail to set forth all grounds in this Petition challenging a specific judgment, you may be barred from presenting additional grounds challenging the same judgment at a later date.

- **Factual Specificity:** You must state facts, not conclusions, in support of your grounds. For example, if you are claiming incompetence of counsel you must state facts specifically setting forth what your attorney did or failed to do. A rule of thumb to follow is — state who did exactly what to violate your federal constitutional rights at what time or place.

## GROUNDS FOR RELIEF

22. State *concisely* every ground on which you claim that you are being held in violation of the constitution, law or treaties of the United States. Summarize *briefly* the facts supporting each ground. (e.g. what happened during the state proceedings that you contend resulted in a violation of the constitution, law or treaties of the United States.) If necessary, you may attach pages stating additional grounds and/or facts supporting each ground.

(a) **GROUND ONE**: _____ SEE ATTACHED PETITION:

_____ ALL CLAIMS HAVE BEEN EXHAUSTED

_____ IN THE STATE COURT.

Supporting FACTS: _____

1) Failure to give a requested jury instruction, providing a defense to the charge of burglary, violated the U.S. Constitution and federal right to due process and a fair trial

2) An instruction that allowed the jury to find guilt without requiring all the elements of the charges to be found true beyond reasonable doubt and the admission of evidence from prior allegations of vandalism, 17 years prior to the current charged offenses, violates federal rights to due process and proof of the charges beyond a reasonable doubt under the Sixth and Fourteenth Amendments to the U.S. Constitution

3) Ineffective assistance of appellate counsel—failing to raise issues on appeal violating petitioner's Sixth Amendment right to the U.S. Constitution

4) Petitioner's sentence violates the Fifth, Sixth, and Fourteenth Amendements to the U.S. Constituion as held by the U.S. Supreme Court under Apprendi, Blakely, and Cunningham

5) Ineffective assistance of counsel failing to investigate evidence (submitted by witness(s)) which defrauded the jury violating petitioner's Sixth and Fourteenth Amendments and federal right to due process and a fair trial

_____

_____

**Did you raise GROUND ONE in the California Supreme Court?**

☒ Yes ☐ No.

    If yes, answer the following:

(1) Nature of proceeding (i.e., petition for review, habeas petition): _____ Habeas

(2) Case number or citation: _____ See Exhibit "F"

(3) Result (attach a copy of the court's opinion or order if available): _____ Denied

I

THE TRIAL COURT PREJUDICIALLY
ERRED BY REFUSING PETITIONER'S REQUEST
TO INSTRUCT THE JURY THAT IT MUST ACQUIT
PETITIONER IF IT FOUND THAT THE HOUSE
WAS HIS OWN HOME, IN VIOLATION OF THE
UNITED STATES CONSTITUTION AND FEDERAL
DUE PROCESS TO A FAIR TRIAL

## PRELIMINARY STATEMENT

**THE TRIAL COURT PREJUDICIALLY ERRED BY REFUSING PETITIONER'S REQUEST TO INSTRUCT THE JURY THAT IT MUST ACQUIT PETITIONER IF IT FOUND THAT THE HOUSE WAS HIS OWN HOME, IN VIOLATION OF THE UNITED STATES CONSTITUTION AND FEDERAL DUE PROCESS TO A FAIR TRIAL**

After the close of the prosecution's case petitioner's counsel made a motion pursuant to section 1118.1, asking the court to dismiss the burglary count. The motion was based on the California's Supreme Court's case of <u>People v. Gauze</u> (1975) 15 Cal.3d 709 which, counsel argued, stands for the proposition that one cannot burglarize one's on home [5 RT at p. 304]. The court denied the motion, finding that there was evidence before the jury to support a finding that this was not petitioner's home [5 RT 312].

During a discussion on jury instructions petitioner's counsel requested a special instruction based on the <u>Gauze</u> case, incorporating the arguments he made at the 1118.1 motion. According to counsel, there was sufficient evidence that petitioner had the right to go into the home to warrant the instruction [5 RT 394]. The court denied the requested instruction finding that there was no evidence that could support that petitioner had a right to be in the home [5 RT 394-396].

Petitioner disagrees and asserts that the failure to instruct based on the evidence and his defense theory violated his rights under both the United States and California Constitutions. Debra Keith testified that petitioner lived in this home, paid Ms. Keith rent, and had all his belongings there [4 RT 253-256, 266] [6 RT 409-410] [See also Preliminary hearing transcript 10/14/05 pages 6-7).

Here, the trial court erred in refusing to give a requested instruction because there was substantial evidence that Debra Keith's home was also petitioner's home. Although, Keith at one point testified that she did not give petitioner a key, she kept spare keys hidden to which petitioner had access and was aware that he had a key [4 RT 224; 266]. Keith also testified that petitioner did some work around the house

1

[4 RT 255-257]. A neighbor, William Rabello, testified that he saw petitioner at the house at "all times," that he "did a lot of work around the place," and that he, "seemed like he was always busy" [5 RT 321-322]. On occasions, petitioner would have friends over [5 RT 322].

Both petitioner's mother and brother testified that petitioner did not live with them, but that he lived with Ms. Keith [5 RT 334, 346]. Peter Gafa testified that petitioner lived with Ms. Keith and did work around the property and to the home [5 RT 361, 364] [5 RT 374].

Petitioner testified that he lived in the home since February 8, 2005, and that he had all his belongings at the home [6 RT 409]. Ms. Keith gave petitioner a key and never asked for it back [6 RT 409-410]. Ms. Keith was aware that he had a key to the home [4 RT 266], and that petitioner's belongings were still at the home at the time of his arrest [4 RT 237-240]. The record does in fact reflect that petitioner did pay rent to the homeowner and helped with groceries [4 RT 255].

//

//

//

//

2

## MEMORANDUM OF POINTS AND AUTHORITIES

**THE TRIAL COURT PREJUDICIALLY ERRED BY REFUSING PETITIONER'S REQUEST TO INSTRUCT THE JURY THAT IT MUST ACQUIT PETITIONER IF IT FOUND THAT THE HOUSE WAS HIS OWN HOME, IN VIOLATION OF THE UNITED STATES CONSTITUTION AND FEDERAL DUE PROCESS TO A FAIR TRIAL**

The Due Process Clause of the Fourteenth Amendment denies States the power to deprive the accused of liberty unless the prosecution proves beyond a reasonable doubt every element of the charged offense, In re Winship, 397 U.S. 358-364;  Jury instructions relieving States of this burden violate a defendant's due process rights, See Francis v. Franklin, 471 U.S. 307, Sandstrom v. Montana, 442 U.S. 510.  Such directions subvert the presumption of innocence accorded to accused persons and also invade the truth – finding task assigned soley to juries in criminal cases.

A criminal defendant is entitled to have a jury instruction on any defense which provides a legal defense to the charge against him and which has some foundation in the evidence, even though the evidence may be weak, insufficient, inconsistent, or of doubtful credibility, United States Ex rel. Perry v. Sielaff, 615 F.2d 402 (1979) at 402.

Failure to give an instruction on the defendant's theory of the case is reversible error if the theory is legally sound and evidence in the case makes it applicable, United States v. Escobar de Bright, 742 F.2d 1196, 1201 (9th Cir. 1984).   A defendant is entitled to an instruction concerning his theory of the case if it is supported by law and has some foundation in the evidence, United States v. Winn, 577 F.2d 86, 90 (9th Cir. 1978)(emphasis added) see, United States v. Falsia, 724 F.2d 1339, 1342 (9th Cir. 1983), United States v. Wright, 593 F.2d 105, 107 (9th Cir.1979), United States v. Hall, 553 F.2d 273,275 (9th Cir. 1977); see also United States v. Sielaff, 615 F.2d 402,403 (7th Cir. 1979), cert. denied, 446 U.S. 940, 100 S. Ct. 2163, 63 L.Ed 2d 794

3

(1980).

The Courts have emphasized that failure to give such a requested instruction is reversible error, <u>United States v. Noah</u>, 475 F.2d 688,697, cert. denied, 414 U.S. 1095, 94 S. Ct. 728, 38 L.Ed 2d 553 (1973) citing <u>Perkins v. United States</u>, 315 F.2d 120,124 (9th Cir.) cert. denied, 375 U.S. 916 (1963); see <u>United States v. Lyman</u>, 592 F.2d 496,504 (9th Cir. 1978), cert. denied, 442 U.S. 931 (1979); <u>Charron v. United States</u>, 417 F.2d 657,660 (9th Cir. 1969); <u>Baker v. United States</u>, 310 F.2d 924, 930 (9th Cir. 1962), cert. denied, 372 U.S. 954 (1963).

In <u>United States v. Escobar de Bright</u>, <u>supra</u>, at 1201-1202 the court held that the right to have the jury instructed as to the defendant's theory of the case is one of the rights so basic to a fair trial that failure to instruct where there is evidence to support the instruction can never be considered harmless. Thus, a failure to instruct the jury from considering the defendant's defense theory of the case precludes the jury from considering the defendant's defense to the charges against him.

The Court in <u>Matthews v. U.S.</u>, 485 U.S. 58,63 (1988) held that a defendant is entitled to a jury instruction on any recognized defense for which there is sufficient evidence for a reasonable jury to find in his favor. In <u>U.S. v. Rodriguez</u>, 45 F.3d 302,307 (9th Cir. 1995), the court held that a defendant's right to an instruction on his theory of the defense is so basic to a fair trial that failure to instruct cannot be harmless, nor considered so.

Here, we know that the facts are substantial and support the <u>Gauze</u> instruction, and we know that the court failed to give such instruction. We also know that had the instruction been given, in light of the testimony, it is likely the jury would have found petitioner not guilty of burglary. The California Supreme court emphasized that "<u>occupancy, rather than ownership,</u>" is

4

the important factor in determining whether one could be convicted of burglary (People v. Gauze, supra, 15 Cal.3d at p. 712).

Thus, under the evidence, petitioner was entitled to an instruction which provided a legal defense to the burglary charge. Petitioner resided at the house for an extended period of time and had resided there in the past [4 RT 206] See Preliminary Transcript 10/14/05 pages 6-7 [4 RT 266]. There was no agreement that petitioner could stay at the house for a limited period, since petitioner testified that Keith asked him to move in with her [6 RT 409]. Petitioner had not moved out prior to the incident, had no other place of residence, and still had his belongings at the home at the time of his arrest[4 RT 237-240]. Petitioner had a key which Keith had not requested that he relinquish [6 RT 409-410], gave Keith money for "helping out for living there" [4 RT 255], and treated the house as his own by taking care of the place [5 RT 321-322] [5 RT 361]. Keith testified petitioner helped with rent/groceries [4 RT 255].

An instructional error relieving the prosecution of the burden of proving beyond a reasonable doubt each element of the charged offense violates petitioner's rights under both the United States and California Constitutions.

Fundamental fairness, as guaranteed by the Sixth Amendment and the Due process Clause of the Federal Constitution, requires that criminal defendants be afforded a meaningful opportunity to present a complete defense California v. Trombetta, (1984) 467 U.S. 479,485, 104 S.Ct. 2528, 81 L.ED 2d 413.

The right to present a defense includes the introduction of admissible evidence. However, absent an instruction on the elements of a defense or it's effect, the jury could not understand how to apply the defense theory or may misunderstand the elements constituting the defense.

Based on this conflict in the evidence, this court cannot conclude, beyond a reasonable doubt, that the jury would have rejected petitioner's claim that

5

the house was his home as well as Keith's.

Accordingly, the trial court's failure to instruct on the principle set forth in **Gauze** cannot be considered harmless. The trial court's error was prejudicial because it's effect was to preclude petitioner's counsel from arguing to the jury that it should acquit petitioner of burglary. In the absence of the instruction, counsel had no basis from which to argue about a theory that, if found true by the jury, would have resulted in petitioner's acquittal.

Petitioner's constitutional right to present a defense requires an instruction that explained to the jury how to apply the defense, by informing the jury of the elements of the defense and the effects of the defense on the facts of the case.

Because the court's instructions (C.T. page 116) provided no way for applying these facts with respect to the burglary charge petitioner had no defense.

The trial court's failure to instruct the jury on this defense undermined his right to submit a defense for which he had an evidentiary foundation.

Accordingly, the trial court's failure to instruct on the principle set forth in **Gauze** was not harmless, and reversal is mandated.


Attachment: Declaration of Manuel M. Soares

//

//

//

6

## DECLARATION OF MANUEL M. SOARES

I, Manuel M. Soares, am the petitioner in this matter and declare as follows:

1) On February 8, 2005, I resided at 4343 Voltaire Street in San Diego California.

2) I paid Debra Keith $100.00 cash a week for rent and in addition to this did numerous home repairs and maintenance to the property while living there.

3) I was provided with a key and had joint use of property with Debra Keith.

4) I shared income and living expenses with Ms. Keith and had all my property at the home.

5) On September 24, 2005, I was informed that I needed to move out of the home.

6) Late evening of September 25, 2005, I was arrested.

I declare under penalty of perjury under the laws of the State of California that the foregoing statement is true and correct.

Date: _July 13th_ , 2008            _____
                                              Manuel M. Soares
                                              Petitioner, Pro Se

7-A

## II

AN INSTRUCTION THAT ALLOWED THE JURY TO FIND GUILT
WITHOUT REQUIRING ALL THE ELEMENTS OF THE CHARGES
TO BE FOUND TRUE BEYOND A REASONABLE DOUBT AND THE
ADMISSION OF EVIDENCE FROM PRIOR ALLEGATION OF VANDALISM
VIOLATED PETITIONER'S FEDERAL RIGHT TO DUE PROCESS AND A FAIR TRIAL

## PRELIMINARY STATEMENT

**AN INSTRUCTION THAT ALLOWED THE JURY TO FIND GUILT WITHOUT REQUIRING ALL THE ELEMENTS OF THE CHARGES TO BE FOUND TRUE BEYOND A REASONABLE DOUBT AND THE ADMISSION OF EVIDENCE FROM PRIOR ALLEGATIONS OF VANDALISM VIOLATED PETITIONER'S FEDERAL RIGHT TO DUE PROCESS AND A FAIR TRIAL**

California Evidence Code Section 1109 allows evidence of prior uncharged domestic violence to be admitted in many cases. This type of evidence should be excluded where it is more prejudicial than probative. Evidence in this case was introduced regarding allegations of vandalism to the property's of Summer West and Leanne Kelly.

These allegations had occurred 12 and 17 years prior to the current charged offense and were more prejudicial than probative due to the remoteness of time as well as the fact that petitioner had never been charged or convicted of these allegations which were used to infer proof upon the instant case (See Evidence Code Section 1109(e)).

The evidence was introduced under Evidence Code section 1109 with accompanying jury instructions ( CALCRIM 375 , CALCRIM 852) violating petitioner's 14th Amendment right to due process and proof of each element of the charges beyond a reasonable doubt.

Summer West testified that in 1989 petitioner followed her home from school, threatened her mother, tore out flowers from her garden and let rabbits out of their cages. Notably, petitioner had never been charged or convicted of these allegations nor did the witness ever testify seeing petitioner do these acts which were used to infer proof in the instant case [3 RT 92-93].

Furthermore, other evidence of allegations were offered and allowed into this trial. Leanne Kelly had a dating relationship with petitioner in the mid 1990's [4 RT 279]. Ms. Kelly testified that she came home one day and found her Christmas tree out in the street trashed and just prior to that her and petitioner had an argument

8

[4 RT 280]. Three months after this incident Ms. Kelly found her house vandalized and had suspected that petitioner was responsible because she and petitioner had fought alot prior to the incident [4 RT 280—282]. Notably, Ms. Kelly testified that she did not witness petitioner committing any of these acts nor had petitioner ever been arrested or convicted of the aformentioned allegations which were used to infer proof upon the instant case [4 RT 287].

Petitioner asserts that the domestic violence propensity evidence and the instructions given in his case (CALCRIM 375, CALCRIM 852, CALCRIM 224, C.T. Volume 1 pages 97, 123, 124) violated his right to due process and a fair trial ( U.S. Const., Amend's. V, VI, and XIV ) by effectively lowering the standard of proof and causing undue prejudice.

Specifically, the instructions given in this case which improperly allowed the jury to convict petitioner based in part on a finding by a preponderance of the evidence that he committed acts of vandalism that had been alleged 12 and 17 years prior to the current charged offense and not found true beyond reasonable doubt.

Here, the allegations were contrary to any remoteness of time as determined in California Evidence Code section 1109(e). The trial court abused it's discretion by allowing this evidence and the prejudice caused by this evidence was substantially outweighed by it's probative value.

//

//

//

//

//

9

## MEMORANDUM OF POINT AND AUTHORITIES

**AN INSTRUCTION THAT ALLOWED THE JURY TO FIND GUILT WITHOUT REQUIRING ALL THE ELEMENTS OF THE CHARGES TO BE FOUND TRUE BEYOND A REASONABLE DOUBT AND THE ADMISSION OF EVIDENCE FROM PRIOR ALLEGATIONS OF VANDALISM VIOLATED PETITIONER'S FEDERAL RIGHT TO DUE PROCESS AND A FAIR TRIAL**

Evidence of prior allegations of vandalism was admitted under Evidence Code Section 1109. In addition to this CALCRIM 375,852 and the interplay of other instructions given in this case instructed the jury that they could infer from such evidence that petitioner was likely to have committed, and did commit the crimes with which he was charged (C.T. Volume 1 pages 94, 97, 123, 124).

Although instructions of this type have generally been approved by California courts (see People v. Reliford, (2003) 29 Cal.4th 1007), the Ninth Circuit Court of Appeals' recent ruling in Gibson v. Ortiz, (2004) 387 F.3d 812, indicates that the instructions given violates petitioner's right to due process and proof of the charges beyond a reasonable doubt. In Gibson an instruction on the preponderance of the evidence violated the defendant's Fourteenth Amendment Due Process rights.

Propensity evidence has long been considered likely to violate due process because of it's tendency to prejudice a jury and lead to a verdict based on the jury's assessment of the defendant's bad character (Old Cheif v. United States, 519 U.S. 172, 181; Michelson v. United States, (1948) 335 U.S. 469, 475, 476; People v. Falsetta, (1991) 21 Cal.4th 903, 913, 915; (U.S. Const., 5th and 14th Amends.)).

Evidence Code Section 1109, which allows use of propensity evidence in domestic violence cases, has survived due process challenges only because the statute requires that such evidence be subjected to exclusion under Evidence Code Section 352 ( People v. Falsetta, supra, 21 Cal.4th 903; People v. Hoover, (2000) 77 Cal.App.4th 1020, 1028-1029) under that section, the evidence of prior acts should be excluded if it's probative value is substantially outweighed by the probability that it's admission will create substantial danger of undue prejudice, of confusing the issues, or of

10

misleading the jury (See California Evidence Code Section 352).

The evidence in this case should have been excluded because it was more prejudicial than probative. Petitioner had never been convicted or arrested for these allegations which were used to infer proof in this case nor had the witnesses testify seeing petitioner do any act of vandalism in 1989 or 1993 as offered by the prosecution to infer guilt. [3RT 93]. [4 RT 287].

The Ninth Circuit Court of Appeals has called into question the validity of this instruction regarding the preponderance of the evidence standard as was given herein petitioner's case. In 2004, the Ninth Circuit had examined a version of CALJIC 2.50.01, the instruction on prior sex crimes analogous to CALJIC 2.50.02 and found that instruction to be deficient (Gibson v. Ortiz, supra, 387 F.3d 812,823).

In Gibson the defendant was charged with sexual assault. At trial, the victim testified to prior uncharged sex offenses by the defendant which were admitted under Evidence Code section 1108 and the jury was instructed with a version of CALJIC 2.50.01 which told the jury that the prior offenses need only be proven by a "preponderance of the evidence" (Gibson at pp. 813-814).

In the instant case the jury also received instructions using the same principle to convict petitioner based on both a "preponderance of the evidence" and "beyond a reasonable doubt' standard (CALCRIM 220; 224; 852; 375; C.T. Volume 1 pages 94, 97, 123, 124). Gibson was also given a version of CALJIC 2.01 regarding the burden of proof for circumstance evidence (Id. at p. 821). As in petitioner's case the jury was also given an instruction regarding the burden of proof for circumstance evidence (CALCRIM 224; C.T. Volume 1 pg. 97).

The Court in Gibson found that "...the interplay of the two instructions allowed the jury to find that Gibson committed uncharged sex offenses by a preponderance of the evidence and thus to infer that he had committed the charged acts based upon facts not found true beyond a reasonable doubt, but by a preponderance of the

11

evidence" (Gibson, at p.822). The court found that CALJIC NO. 2.50.01, [ran] directly contrary to Winship's maxim that a defendant may not be convicted except "upon proof beyond a reasonable doubt of <u>every</u> <u>fact</u> <u>necessary</u> to constitute the crime with which he is charged." (Ibid; see also <u>Sullivan v. Louisiana</u> (1993) 508 U.S. 275, 277-278; <u>In re Winship</u> (1970) 397 U.S. 358,364; <u>People v. Roder</u> (1983) 33 Cal.3d 491,497; U.S. Const., 6th Amend.).

The Court further wrote, " The jury was never told how, or if, the two standards of proof set forth in the instructions should be harmonized. Rather it received only a general instruction regarding circumstantial evidence, which required proof beyond a reasonable doubt, and a specific instruction relating to previous sexual abuse and domestic violence which required a only proof by a preponderance of the evidence " (Gibson, at pp. 823-824).

The permission given to the jury by CALCRIM 375 and CALCRIM 852 to find that petitioner had committed prior acts of vandalism by only a "preponderance of the evidence" thus directly contradicted his right to have each fact essential to complete the set of circumstances necessary to establish his guilt proven beyond a reasonable doubt. For Constitutional purposes, the crux of petitioner's claim is indistinguishable from that of <u>Gibson</u>.

Although the versions of these instructions (CALCRIM 224; CALCRIM 375; CALCRIM 852) given in the current case are slightly different than the instructions at issue in <u>Gibson</u>, the instruction still contains the same error. Here, instructions on both standards of proof were given to the jury. Petitioner's jury was presented with <u>two</u> routes of conviction, one by a constitutionally sufficient standard and one by a unconstitutionally deficient one.

The instructions given to petitioner's jury runs directly contrary to <u>Winship's</u> maxim that a defendant may not be convicted except "upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged"

12

(Winship, 397 U.S. at 364, 90 S.Ct. 1068; see also Taylor, 436 U.S. at 485-86, 98 S.Ct. 1930 ("[T]he Due Process Clause of the Fourteenth Amendment must be held to safeguard against dilution of the principle that guilt is to be established by probative evidence and beyond a reasonable doubt.") (citations omitted).

Nothing in these specific sentences or in the charge as a whole makes clear to the jury that one of these contradictory instructions carries more weight than the other. Language that merely contradicts and does not explain a constitutionally infirm instruction will not suffice to absolve the infirmity. This Court has no way of knowing which of the two irreconcilable instructions the jurors applied in reaching their verdict.

The jury instructions given in petitioner's case explicitly permits the jury to infer that petitioner committed the crime based on a finding by a preponderance of the evidence that he had committed vandalism alleged 17 years prior to the current charges and not found true beyond a reasonable doubt.

The instruction directly contradicts the requirement that circumstantial evidence be found by proof beyond a reasonable doubt (See CALCRIM 224; C.T. Volume 1 pg. 97). Although the Constitution does not require jury instructions to contain any specific language, the instruction must convey both that a defendant is presumed innocent until proven guilty and that he may only be convicted upon a showing of proof beyond a reasonable doubt (See Victor v. Nebraska, 511 U.S. 1,5, 114 S.Ct. 1239, L.Ed.2d 583 (1994)."[T]he essential connection to a beyond a reasonable doubt factual finding cannot be made where the instructional error consists of a misdescription of the burden of proof, which vitiates all the jury's findings" Sullivan, 508 U.S. at 281, 113 S.Ct. 2078 (emphasis in original). Where such an error exists, it is considered structural and thus is not subject to harmless error review (See id. at 280-82, 113 S.Ct. 2078).

However, if a jury instruction is deemed "ambiguous" it will violate due process

13

only when a reasonable likelihood exists that the jury has applied the challenged instruction in a manner that violates the Constitution, <u>Estelle</u>, 502 U.S. at 72, 112 S.Ct. 475. Any challenged instruction must be considered in light of the full set of jury instructions and trial record as a whole (See <u>Cupp v. Naughten</u>, 414 U.S. 141, 146–147, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973).

When the court gave the jury instructions that allowed it to convict petitioner on an impermissible legal theory, as well as a theory that meets constitutional requirements, "the unconstitutionality of any of the theories requires that the conviction be set aside." <u>Boyde</u>, 494 U.S. at 379–80, 110 S.Ct. 1190. As the <u>Boyde</u> court reasoned, when alternate theories are involved, it is "equally likely that...the verdict rested on an unconstitutional ground" as on a constitutional one Id. at 380, 110 S.Ct. 1190 (citations omitted).

Because the jury relied upon facts found by a preponderance of the evidence to find petitioner guilty his conviction cannot stand. Each fact which is essential to complete a set of circumstances necessary to establish guilt must be proved beyond a reasonable doubt. In other words, before an inference essential to establish guilt may been found to have been proved beyond a reasonable doubt, each fact or circumstance on which the inference necessarily rests must be proved beyond a reasonable doubt.

A defendant in a criminal action is presumed to be innocent until the contrary is proved, and in case of a reasonable doubt whether [his] guilt is satisfactorily shown, [he] is entitled to a verdict of not guilty. This presumption places upon the People the burden of proving [him] guilty beyond a reasonable doubt.

The Ninth Circuit found that the failure to require that all elements of a defendants crime be proven beyond a reasonable violated the Sixth Amendment right to a jury verdict of guilty beyond a reasonable doubt and was therefore reversible per se (<u>Gibson v. Ortiz</u>, <u>supra</u>, 387 F.3d at pp. 824–825, citing <u>Sullivan v. Louisiana</u>,

14

supra, 508 U.S. at 281-282). Because the same error is present in the current case, petitioner's conviction must be reversed.

Even if this matter is reviewed for harmless error, the error still requires reversal. This error violated petitioner's federal constitutional right to due process and proof beyond a reasonable doubt.

The conviction cannot stand unless it appears beyond a reasonable doubt that the error did not contribute to the jury's verdict (Chapman v. California, (1967) 386 U.S. 18, 23-24, See People v. Quintanilla, (2005) 132 Cal.App. 4th at p. 583).

Here, it cannot be said beyond a reasonable doubt that the instructional error and the testimony of allegations, 17 years prior to the current charges, did not taint the jury's verdict. This instruction allowed the jury to convict on evidence amounting to less than proof beyond a reasonable doubt. Thus, petitioner's conviction must automatically be reversed without any need to show actual prejudice.

//

//

//

//

Attachment:  Jury Instructions Given

<u>JURY INSTRUCTIONS GIVEN</u>

C.T. VOLUME 1 PAGES 94, 97, 123, AND 124

## 220. REASONABLE *DOUBT*

The fact that a criminal charge has been filed against the defendant is not evidence that the charge is true. You must not be biased against the defendant just because he has been arrested, charged with a crime, or brought to trial.

A defendant in a criminal case is presumed to be innocent. This presumption requires that the People prove each element of a crime [and special allegation] beyond a reasonable doubt. Whenever I tell you the People must prove something, I mean they must prove it beyond a reasonable doubt [unless I specifically tell you otherwise].

Proof beyond a reasonable doubt is proof that leaves you with an abiding conviction that the charge is true. The evidence need not eliminate all possible doubt because everything in life is open to some possible or imaginary doubt.

In deciding whether the People have proved their case beyond a reasonable doubt, you must impartially compare and consider all the evidence that was received throughout the entire trial. Unless the evidence proves the defendant ▮ guilty beyond a reasonable doubt, (he/▮▮▮)(is/▮ entitled to an acquittal and you must find (him/▮▮▮▮ not guilty.

Requested by Peo/Pltf/Deft
Requested by Stipulation
Given (Given as Modified)
Withdrawn
Refused-Reason:_____

5

## 224. CIRCUMSTANTIAL EVIDENCE: SUFFICIENCY OF Evidence

Before you may rely on circumstantial evidence to conclude that a fact necessary to find the defendant guilty has been proved, you must be convinced that the People have proved each fact essential to that conclusion beyond a reasonable doubt.

Also, before you may rely on circumstantial evidence to find the defendant guilty, you must be convinced that the only reasonable conclusion supported by the circumstantial evidence is that defendant is guilty. If you can draw two or more reasonable conclusions from the circumstantia evidence, and one of those reasonable conclusions points to innocence and another to guilt, you must accept the one that points to innocence. However, when considering circumstantial evider you must accept only reasonable conclusions and reject any that are unreasonable.

Requested by Peo/Pltf/Deft
Requested by Stipulation
(Given) Given as Modified.
Withdrawn
Refused-Reason:_____

Judicial Council of California Jury Instructions

## 852. EVIDENCE OF UNCHARGED DOMESTIC VIOLENCE

The People presented evidence that the defendant committed domestic violence that was not charged in this case, ███████████████████

[Domestic violence means abuse committed against an adult who is a former cohabitant[,]/[former cohabitant[,]/[or] person who dated or is dating the defendant.]

[The term cohabitants means two unrelated adults living together for a substantial period of resulting in some permanency of the relationship. Factors that may determine whether people are cohabiting include, but are not limited to, (1) sexual relations between the parties while sharing the same residence, (2) sharing of income or expenses, (3) joint use or ownership of property, (4) the parties' holding themselves out as husband and wife, (5) the parties' registering as domestic partners, (6) the continuity of the relationship, and (7) the length of the relationship.]

You may consider this evidence only if the People have proved by a preponderance of the evidence that the defendant in fact committed the uncharged domestic violence. Proof by a preponderance of the evidence is a different burden of proof from proof beyond a reasonable doubt. A fact is proved by a preponderance of the evidence if you conclude that it is more likely than not that the fact is true.

If the People have not met this burden of proof, you must disregard this evidence entirely.

If you decide that the defendant committed the uncharged domestic violence, you may, but are not required to, conclude from that evidence that the defendant was disposed or inclined to commit domestic violence and, based on that decision, also conclude that the defendant was likely to commit [and did commit] the offense alleged in Count One, involving domestic violence, as charged here. If you conclude that the defendant committed the uncharged domestic violence, that conclusion is only one factor to consider along with all the other evidence. It is not sufficient by itself to prove that the defendant is guilty of Count One involving domestic violence>. The People must still prove each element of every charge beyond a reasonable doubt.

[Do not consider this evidence for any other purpose, ███████████████████

Requested by Peo/Pltf/Deft
Requested by Stipulation
Given/Given as Modified
Withdrawn
Refused-Reason:_____

Page 1 of 2

Judicial Council of California Jury Instructions

34

## 375: Evidence of Uncharged Property Offenses to Prove Identity or Common Plan

The People presented evidence that the defendant committed other offenses against the property of Leanne Kelly and Bernita West, women with whom he had a former dating relationship.

You may consider this evidence only if the People have proved by a preponderance of the evidence that the defendant in fact committed the offenses against the property of Leanne Kelly and Bernita West. Proof by a preponderance of the evidence is a different burden of proof than proof beyond a reasonable doubt. A fact is proved by a preponderance of the evidence if you conclude that it more likely than not that the fact is true.

If the People have not met this burden, you must disregard this evidence entirely.

If you decide that the defendant committed the offenses against the property of Leanne Kelly and Bernita West, you may, but are not required to, consider that evidence for the limited purpose of deciding whether or not:

1. The defendant was the person who committed either Burglary or Vandalism in this case.
2. The defendant had a plan or scheme to commit either Burglary or Vandalism in this case.

In evaluating this evidence, consider the similarity or lack of similarity between the uncharged property offenses and the charged offense of burglary or vandalism.

Do not consider this evidence for any other purpose

Do not conclude from this evidence that the defendant has a bad character or is disposed to commit property offenses.

If you conclude that the defendant committed the uncharged property offenses or acts, that conclusion is only one factor along with all the other evidence. It is not sufficient by itself to prove that the defendant is guilty of either burglary or vandalism. The People must still prove each element of every charge beyond a reasonable doubt.

Requested by Peo/Pltf/Deft
Requested by Stipulation
Given/Given as Modified
Withdrawn
Refused-Reason:_____

35

# III

## INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL FAILING TO RAISE ISSUES ON APPEAL VIOLATING PETITIONER'S SIXTH AMENDMENT RIGHT TO THE UNITED STATES CONSTITUTION

III

## INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL FAILING TO RAISE ISSUES ON APPEAL VIOLATING PETITIONER'S SIXTH AMENDMENT RIGHT TO THE UNITED STATES CONSTITUTION

### PRELIMINARY STATEMENT

When first filing this petition with the state appellate court petitioner answered question # 10 of the MC-275 habeas form and asserted that his appellate counsel failed to raise the 1109 evidence in his direct appeal.

Petitioner has submitted correspondences from his appellate counsel showing that counsel was aware of and could have raised certain issues on appeal. Counsel had known about these issues yet failed to raise these issues without legitimate strategic purpose. Petitioner had asked his appellate counsel to raise claims regarding the evidence under Evidence Code section 1109 and other issues as shown in these correspondences to petitioner from his appellate counsel. These instructional errors and admission of evidence from allegations of vandalism violated petitioner's federal right to due process and a fair trial and should have been raised by appellate counsel on appeal. Notably, the state courts fail to address this claim.

//

//

//

15-A

## III

### INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL FAILING TO RAISE ISSUES ON APPEAL VIOLATING PETITIONER'S SIXTH AMENDMENT RIGHT TO THE UNITED STATES CONSTITUTION

### MEMORANDUM OF POINTS AND AUTHORITIES

As aforementioned, Petitioner has submitted correspondences showing that his appellate counsel was aware of and could have raised other claims in this case.

Under Evitts v. Lucey 469 U.S. 387, 396-99 (1985) and Miller v. Keeney 882 F.2d 1428, 1430-32 (9th Cir. 1989), a defendant is entitled to the effective assistance of appellate counsel. Under the court's holding in Delgado v. Lewis, 223 F.3d 976 980-82 (9th Cir. 2000), counsel's failure to raise issues on appeal was ineffective assistance of counsel. In Mason v. Hanks, 97 F.3d 887,894 (7th Cir. 1996), the court found counsel's failure to raise obvious and significant issues was ineffective because it was without legitimate strategic purpose. Counsel's failure to find error and raise other constitutional claims, if it would have effected one juror, was ineffective assistance of counsel on appeal (Carter v. Bowersox, 265 F.3d 705, 715-16 (8th Cir. 2001) ). Any claim that counsel should have, but did not, raise on appeal that in all likelihood would have succeeded on appeal, is ineffective assistance of counsel (Eagle v. Linahan, 268 F.3d 1306, 1322 (11th Cir. 2001) ).

Petitioner's right to effective assistance of appellate counsel was violated when counsel had these claims and did not raise them on appeal.

Appellant counsel agreed with petitioner that the judge may have permitted too much evidence in under Evidence Code section 1109 and that much more was introduced than merely evidence of prior domestic violence (See attached correspondences).

15-B

Because of counsel's failure to raise these issues on appeal petitioner is left with the burden of raising these claims on habeas proceedings.

If not but for counsel's failure petitioner would not be in the predicament of raising these issues or explaining such to this court . Petitioner has shown that counsel was aware of and could have raised other claims on appeal yet failed to do so and because of these circumstances petitioner's right to effective assistance of appellate counsel was violated.

Attachment: Correspondences from appellate counsel

//

//

//

//

15–C

CORRESPONDENCE FROM

APPELLATE COUNSEL

TO PETITIONER

Manuel Soares
January 17, 2007
Page Two

the damage was in excess of a certain amount of money, this argument is pretty much moot.

Your claim that your trial lawyer provided you with ineffective assistance of counsel raises some interesting issues. You are right. A lawyer has a duty to properly investigate the case and if he doesn't this can amount to ineffective assistance of counsel. But at the second *Marsden* hearing, after the trial, you pointed out all these problems and your lawyer had an opportunity to respond to those allegations. He basically said that he did follow up on your allegations and was unable to discover any exculpatory evidence. The prosecutor added that he investigated your allegations of insurance fraud on the part of the witnesses against you, and found out that there was no such investigation with the insurance company. Of course, I realize that prosecutors, too, can lie like other people, but just as the trial judge was free to believe the other witness's testimony and not yours, the appellate court is not likely to accept our version of the facts, especially without any hard facts to support these allegations.

I think there are certain potential issues that may be raised on this appeal. For one, there may be an argument that there is insufficient evidence that you committed an attempted criminal threat. Although the California Supreme Court has ruled that such a crime exists in California, here there was no evidence with respect to two of the elements required to prove the offense: communication of the statement to the victim and actual sustained fear on part of the victim.

There may also be an issue with respect to the burglary count. As you say, you were living at the house at the time, and therefore had the right to be there. A person can't burglarize his own home. If I can argue that you had the right to be at the house, then you did not enter it "unlawfully." I have not researched this issue extensively and I still don't know how the issue will turn out, but I think it's worth researching.

I agree with you that the judge may have permitted too much evidence in under Evidence Code section 1109. This code section permits evidence of prior domestic violence to prove the current charge. But here much more was introduced than merely evidence of prior domestic violence. Again, I have not researched the issue yet and I don't know what my research will yield. However, this is certainly worthy of considering.

In the course of my research other issues may come up. Again, I will raise any issues on your behalf that I can, under the law. And I will keep you informed about any new developments in the case. In order for me to do this, please make sure I have your correct address at all times.

**GIDEON MARGOLIS**
**ATTORNEY AT LAW**
**P.O. BOX 12376**
**EL CAJON, CA 92022-2376**
**(619) 588-5145**

January 29, 2007

Mr. Manuel Martinez Soares, # F39579
P.O. Box 2000
Vacaville, CA 95696

Re: <u>People v. Manuel Martinez Soares</u>
Court of Appeal # D049480
Superior Court # SCD193952 (San Diego)

Dear Mr. Soares:

Thanks for your letters of January 15 and January 21.

I've spoken to your mother on the phone. She sounds like a very pleasant lady. I don't think she can provide much help as far as the appeal is concerned, but it's always good to have an additional person in your corner.

I'm still researching various aspects of the law as it applies to your appeal. Some of the issues you've brought to my attention are definitely worthy of consideration, and I'm giving them my full attention. For example, your point that one cannot burglarize his own home, and your point that some evidence was improperly introduced pursuant to Evidence Code section 1109, may be good arguments on appeal. Again, matters of witness credibility are by law within the jury's province, and thus not properly arguable on appeal.

I'll let you know about any new developments in the case as I go along. The opening brief is currently due on or before February 21, and I hope to be able to file it by then. I'll send you a copy when I file it with the Court of Appeal.

Again, please continue to keep me updated with your new address, if they move you to a new location. And don't hesitate to write again if you have any questions or comments.

Yours very truly,

Gideon Margolis

Manuel Soares
February 1, 2007
Page Three


be some witnesses who would have testified in your favor are not enough to support a habeas corpus claim.

I'm aware of the recent *Cunningham* decision. It may very well apply to your case, since the trial judge imposed the upper term. The judge here relied both on recidivist factors, which are outside the ambit of *Cunningham*, and on factors relating to the crime (such as the extensive damage at the house), which are subject to jury determination. Nevertheless, I believe an argument can be made that reliance on the improper factors may have contributed to the judge's decision to impose the upper term.

As I'm working on your appeal, I'm continuing to look for issues that may be raised on appeal. An argument may be made that there was insufficient evidence with respect to the burglary count because the house was your own home. Alternatively, it may be possible to argue that the judge should have instructed the jury that if it found you lived in the home, it would have to find you not guilty because a person cannot burglarize his own home. This was a factual determination that properly should have been left to the jury.

There also may be an argument that the judge allowed in too much other crimes evidence. Some of those priors go back pretty far. Although a judge is vested with considerable discretion on these issues, there still may be an argument.

Again, I want to assure you that I'm considering very seriously all the issues you have brought to my attention, and if there is any legal way I can use this information, I will use it either on the appeal or on a habeas corpus petition. But you have to realize what the limitations are, and that in the absence of actual proof, we can't do much.

I hope this clarifies some of the questions you had. Please don't hesitate to write again if you have other questions or comments.

Yours very truly,

Gideon Margolis

IV

CALIFORNIA'S DETERMINATE SENTENCING LAW, BY PERMITTING
SENTENCING JUDGES TO IMPOSE ENHANCED, CONSECUTIVE OR
AGGRAVATED SENTENCES BASED ON THEIR DETERMINATION OF
FACTS NOT FOUND TRUE BY THE JURY OR ADMITTED BY THE
DEFENDANT VIOLATES THE SIXTH AND FOURTEENTH AMENDMENTS

## PRELIMINARY STATEMENT

Petitioner is challenging the Judge's decision to impose an aggravated term and a consecutive term of imprisonment based on extrinsic factors not found by a jury and based on a preponderance of the evidence, as Petitioner alleges and the United States Supreme Court in <u>Cunningham v. California</u>, 549 U.S.___,(2007) has held that such sentencing violates the Sixth Amendment of the United States Constitution.

A jury found Petitioner guilty of Corporal injury to a spouse or roommate (Pen. Code, §273.5 subd. (a); all further undesignated statutory references are to the Penal Code); Petitioner was also found guilty of residential burglary(§§459, 460), vandalism (§594, subds. (a); (b)(1); and of attempting to make criminal threats. The Court imposed the upper term of six years for burglary which it doubled as a strike to twelve years. The Court imposed a consecutive, doubled one-third middle term for the corporal injury (§273.5) of two years. The court imposed an upper term of three years for the vandalism (§594,subds.(a);(b)(1)) but stayed the sentence pursuant to section 654. The court imposed a consecutive eight month term (one-half of the middle term of two years for criminal threats,) doubled as a strike. The court imposed an additional term of five years pursuant to section 667, subdivision (a)(1). Petitioner received a total sentence of 19 years and 8 months and the aggravations of petitioner's sentence were done under California statutes and rules related to sentencing, by the Judge using the preponderance of evidence standard and not, as required, by a jury under the beyond a reasonable doubt standard. This violates the Fifth, Sixth, and Fourteenth Amendments to the United States Constitutions. <u>See</u>, <u>Cunningham</u>, <u>supra</u>, <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000), <u>Blakely v. Washington</u>, 542 U.S. 296 (2004), and <u>United States v. Booker, 543 U.S. 220 (2005)</u>.

<u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

## I. CALIFORNIA'S DETERMINATE SENTENCING LAW

Under California's Determinate Sentencing Law (DSL), enacted 01 July 1977, after a defendant suffers a conviction, a Judge, not a jury, determines and imposes punishment.  Cal. Pen. Code. [1].  For most felonies, the Judge must sentence the defendant to either a lower, middle, or upper term of imprisonment.  Judges have no authority to devise <u>ad hoc</u> sentences, or otherwise deviate from the DSL.

Sentencing Judges <u>must</u> impose the middle term, <u>unless</u> they find the existence of additional facts which justify a mitigated or aggravated term:  "When a judgment of imprisonment is to be imposed and the statute specifies three possible terms, <u>the court shall order imposition of the middle term</u>, unless there are circumstances in aggravation or mitigation of the crime."  Sec. 1170(b); emphasis added;  see also, Cal. Rules of Court (CRC), Rule 4.420(a) ("The middle term shall be selected unless imposition of the upper or lower term is justified by circumstances in aggravation or mitigation."). Thus, under the DSL, the middle term is the presumptive sentence. <u>People v. Black</u>, 35 Cal.4th 1238, 1257 (2005).

Judges may depart from the presumptive middle term and impose the upper term only where they find exceptional circumstances in the form of aggravating factors.  Sec. 1170(b).  The DSL allows Judges to find such aggravating factors by only a <u>preponderance of the evidence</u>.  CRC, Rule 4.420(b).  In the absence of circumstances in aggravation, imposition of the upper term is unauthorized and

---

1.  All statutory references are to the California Penal Code unless otherwise specified.

requires reversal of the defendant's sentence.  Sec. 1170(b); CRC, Rule
4.420(a) and (b).

Although Judges need not state reasons for imposing the pre-
sumptive middle term, they must state orally on the record their
"reasons for selecting the upper or lower term," including "a con-
cise statement of the ultimate facts which the court deemed to con-
stitute aggravation or mitigation justifying the term selected."
CRC, Rule 4.420(e).

Rule 4.421 sets forth a non-exhaustive list of circumstances
which may constitute aggravating factors, including facts relating to
the crime, facts relating to the defendant, and "[a]ny other facts
statutorily declared to be circumstances in aggravation."  CRC, Rule
4.421(a)-(c).  Rule 4.408(a) further provides that when making dis-
cretionary sentencing decisions, Judges may consider "additional cri-
teria reasonably related to the decision being made."

However, Judges may _not_ use a fact which is an element of
the offense as an aggravating factor.  Rule 4.420(d).  Similarly,
even where a fact is not technically an element of the underlying
offense, Judges may not rely upon it as an aggravating factor where
the fact is inherent in the crime.  See, e.g. People v. Young, 146
Cal.App.3d 729, 734 (1983) (Judge improperly relied upon "extreme
serious nature of the offense" to aggravate defendant's sentence for
assault with a deadly weapon since this offense is "obvious[ly]" an
extremely serious offense).  The DSL also prohibits Judges from im-
posing the upper term based on a fact charged and found true as a
sentence enhancement unless the Judge first strikes the punishment
associated with the enhancement.  Sec. 1170(b); CRC, Rule 4.420(c).

18

Consequently, in finding the existence of factors in aggravation, sentencing Judges necessarily rely on facts beyond those inherent in the jury's verdict or the defendant's plea, and those facts do not have to be proven beyond a reasonable doubt.

### THE AGGRAVATING OF PETITIONER'S SENTENCE

As aforementioned, Petitioner's sentence was aggravated for factors found by the Judge. After dismissing the jury the Judge imposed consecutive sentences without any jury deliberation imposing a sentence above and beyond the facts reflected in the jury's verdict. The Judge set forth factors based on the preponderance of the evidence and extrinsic factors not presented to the jury [8 RT 586-588]. None of these factors had been charged in the accusatory pleading, and none was submitted to the jury or found true beyond a reasonable doubt. Moreover, the Judge imposed consecutive sentences based on the same premise and on the same operating set of factors. Such fact finding subjected petitioner to years of punishment beyond that reflected in the jury's verdict. "If a State makes an increase in a defendant's authorized punishment contingent on a finding of fact, that fact - no matter how the State labels it - must be found by a jury beyond a reasonable doubt...A defendant may not be exposed to a penalty exceeding the maximum he would if punished according to the facts reflected in the jury verdict alone"( Ring v. Arizona (2002) 536 U.S. 584,602).

When a Judge inflicts punishment that the jury's verdict alone does not allow, the jury has not found all the facts " which the law makes essential to the punishment," and the Judge exceeds his proper authority. Moreover, Petitioner was subjected to aggravated and consecutive sentences not reflected in the jury's verdict and based on extrinsic factors set forth by a Judge clearly in violation of Cunningham.

19

## SUMMARY OF ARGUMENT

In <u>Blakely v. Washington</u>, 542 U.S. 296, 301, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), and <u>Apprendi v. New Jersey</u>, 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed. 435 (2000), the United States Supreme Court confirmed that any fact, other than the fact of a prior conviction, which increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and then proven beyond a reasonable doubt. On 22 January 2007, the United States Supreme Court decided <u>Cunningham v. California</u>, and applied the holdings in <u>Blakely</u> and <u>Apprendi</u> to California's Determinate Sentencing Law (DSL; PC 1170, <u>et seq</u>.) (Opinion 05-6551). The Supreme Court has also recently applied this constitutional mandate to invalidate the Federal Sentencing Guidelines, Washington State's sentencing scheme, and Arizona's Death Penalty Law to the extent they permitted judicial factfinding of aggravating factors to justify the imposition of a sentence greater than the maximum authorized by the jury's verdict or the defendant's admissions. <u>United States v. Booker</u>, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005).; <u>Blakely</u>, 542 U.S. 296, 124 S.Ct. 3531; <u>Ring v. Arizona</u>, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed. 2d 556 (2002).

The procedure for imposing an upper term sentence under California's DSL contravenes the bright-line rule set forth in <u>Cunningham</u>, <u>Blakely</u> and <u>Apprendi</u> in violation of the Sixth Amendment right to a jury trial and the Fourteenth Amendment due process right to proof beyond a reasonable doubt. When a criminal defendant in Cali-

fornia suffers a conviction for a felony offense which specifies three possible terms – a lower, middle, and upper term – the DSL requires the sentencing Judge to impose the middle term unless the Judge finds circumstances in aggravation or mitigation.   Accordingly, **the middle term is the presumptive sentence, or "statutory maximum" allowable for the offense.**   Nevertheless, without additional jury findings, the DSL authorizes the Judge to depart from this presumptive term to impose an upper term based on the Judge's finding of aggravating factors by <u>a preponderance of the evidence</u>.   This procedure for imposing upper term sentences is indistinguishable from the procedure used in <u>Cunningham</u> and the Washington State procedure for imposing exceptional sentences which the Supreme Court of the United States found unconstitutional in <u>Blakely</u>.

In Petitioner's case his conviction for burglary should have subjected him to a presumptive middle term on the principal term of 4 years in State Prison.

1. Although Petitioner's attorney erroneously advised him to admit to a prior 1996 felony conviction, it should not have aggravated petitioner's sentence for burglary from 4 to 12 years.   Furthermore, the Judge enhanced petitoner's sentence an additional 5 years under section 667 which was not presented to the jury or reflected in the verdict. The findings in aggravation and the factors used to impose the consecutive sentences are based on extrinsic factors not found by a jury and not found under the beyond a reasonable doubt standard.

Under the majority's approach any fact that increases the upper bound on a Judge's sentence discretion is an element of the offense.   Facts that have been taken into account by sentencing Judges to assess a sentence within a broad range – such as drug quantity, role in offense, risk of bodily injury all must now be charged in an indictment and submitted to a jury. Simply because it is the legislature, rather than the Judge, that constrains the extent to which such facts may be used to impose a sentence within a pre-exsisting statutory range (<u>In re Winship</u>, 397 U.S. 358 (1970)).

<u>Cunningham</u>/ <u>Blakely</u>/<u>Apprendi</u>/explicitly condemn as a Sixth Amendment

1.) [7 RT 549 lines 24-25]

violation such judicial factfinding of aggravating and extrinsic factors to justify the imposition of a sentence greater than the statutory maximum or a consecutive sentence than the maximum authorized by the jury's verdict. There were no factors that had been charged in the accusatory pleading, and none was submitted to the jury to be found true beyond a reasonable doubt. Petitioner's sentence therefore violates the Sixth and Fourteenth Amendments, as diccussed in Apprendi, Blakely, and Cunningham.

Similarly, the Court's precedents reveal the Judge's imposition of a sentence above and beyond the statutory maximum allowed pursuant to the jury's findings by a mere "preponderance of the evidence" as a clear violation of Petitioner's due process right to proof of every element of the charged [enhancement] offense beyond a reasonable doubt.

Accordingly, regardless of what a penalty provision is labeled under state law, it is subject to the Fifth Amendment Double Jeopardy Clause to the same extent that it is subject to the Sixth and Fourteenth Amendments, including under Apprendi. (People v. Seel (2004) 34 Cal.4th 535,545, 548 [relying on United States v. Burks (1978) 437 U.S. 1, 16 [98 S. Ct. 2141, 57 L.Ed.2d 1].) Indeed, California provided adequate procedural safeguards, initially, including trial by jury and proof beyond a reasonable doubt, with regard to the charged offenses of burglary (§§459/460), corporal injury to a cohabitant (§273.5), vandalism (§594) and attempted criminal threat (§§644/422) that are at issue in this petition, specifically a 5 year enhancement and upper term aggravating factors not found by a jury. Yet, after the jury findings, the Court failed to furnish him with those same safeguards provided by the Due Process Clause as to the existence of factors used in aggravation, as well as to the existence of factors used by the Judge to impose consecutive sentences, California has no principled basis for depriving defendants of such basic due process safeguards in the proof of these circumstances and does so by labelling the factors as "circumstances in aggravation" (See California Rules of the Court, CRC. Rule 4.421.)

[California renumbered their entire CRC Rules effective 01 January 2007]) or by labelling the CRC Rule "Criteria affecting concurrent or consecutive sentences" (Rule 4.425).  Petitioner's Federal Constitutional argument against the imposition of aggravated terms is the same argument against the imposition of consecutive sentences, as incorporated herein.

In People v. Black, 35 Cal.4th 1238 (2005), the California Supreme Court concluded the DSL's procedure for imposing the upper term does not offend the Sixth or Fourteenth Amendments.  However, in arriving at this conclusion, the State Supreme Court relied on grounds decisively rejected  in Blakely, and reaffirmed in Cunningham.  They should also be rejected in this petition, accordingly.

The Cunningham Court addressed the California DSL sentencing scheme and made it clear that any judicial factfinding which forms the basis for increasing a sentence beyond the statutory maximum authorized by the jury's verdict — whether the judicially determined facts require a sentence enhancment or merely allow it — is unconstitutional.

The California Supreme Court also deemed it critical that the list of aggravating factors a sentencing Judge may consider under the DSL to aggravate a sentence or make one consecutive is illustrative under the DSL rather than exhaustive.  Blakely and Cunningham both rejected this distinction as immaterial.  Whether a sentencing scheme permits a Judge to impose an enhanced or consecutive sentence on an enumerated factor or not does not change the fact that the jury's verdict alone still fails to authorize Petitioner's enhanced sentence imposed by the Judge.

23

ARGUMENT

I.   CALIFORNIA'S DETERMINATE SENTENCING LAW, BY
     PERMITTING SENTENCING JUDGES TO IMPOSE ENHANCED, CONSECUTIVE
     OR AGGRAVATED SENTENCES BASED ON THEIR DETER-
     MINATION OF FACTS NOT FOUND BY THE JURY OR
     ADMITTED BY THE DEFENDANT, VIOLATES THE SIXTH
     AND FOURTEENTH AMENDMENTS

     A.   Cunningham, Blakely,  and Apprendi Require
          Any Fact, Other Than The Fact Of A Prior
          Conviction, That Increases The Penalty For
          A Crime Beyond The Statutory Maximum To Be
          Submitted To A Jury And Proved Beyond A
          Reasonable Doubt.

The Sixth and Fourteenth Amendments "require criminal con-
victions to rest upon a jury determination that the defendant is
guilty of every element of the crime with which he is charged, be-
yond a reasonable doubt." United States v. Gaudin, 515 U.S. 506,
509-510 (1995); see also Mullaney v. Wilbur, 421 U.S. 684, 698
(1975);  In re Winship, 397 U.S. 358, 363-364 (1970).  Where proof
of a particular fact exposes the defendant to greater punishment
than that available in the absence of such proof, that fact is an
element of the crime which the Sixth Amendment requires to be  pro-
ven to a jury beyond a reasonable doubt.  Apprendi, 530 U.S. at 490;
Mullaney, 421 U.S. at 698; and Specht v. Patterson, 386 U.S. 605,
607 (1967).

The right to a jury trial reflects the historical intention
to ensure people's control in the judiciary.  Blakely, 542 U.S.  at
305-06.  "The very reason  the Framers  put a jury-trial guarantee
in the Constitution is that they were unwilling to trust government
to mark out the role of the jury."  Id. at 308.  "Apprendi carries
out this design by ensuring that the judge's authority to sentence

derives wholly from the jury's verdict." Id. at 306. In particular,
Apprendi requires that "[o]ther than the fact of a prior conviction,
any fact that increases the penalty for a crime beyond the prescribed
statutory maximum must be submitted to a jury, and proved beyond a
reasonable doubt." Apprendi, 530 U.S. at 490; see also Booker, 543
U.S. at 244. In Apprendi, a factual finding under New Jersey's hate
crime statute that defendant committed the charged possession of a
firearm offense with the purpose to intimidate individuals because
of race increased the statutory maximum penalty from between five and
ten years imprisonment to between ten and twenty years imprisonment.
As a result, the Court determined that this factual finding consti-
tuted an element of the offense to be submitted to a jury and proved
beyond a reasonable doubt. Apprendi, 530 U.S. at 490-92.

        In Ring v. Arizona, the Court applied the holding of Appren-
di to Arizona's death penalty law. 536 U.S. at 589. In Blakely v.
Washington, the Court further elaborated on a defendant's right to
a jury determination of non-recidivist aggravating factors beyond a
reasonable doubt. Washington law permitted the Judge to impose a
sentence above the standard range if he found the existence of an
aggravating factor demonstrating "substantial and compelling reasons
justifying an exceptional sentence." Blakely, 542 U.S. at 299. The
Judge could make such a finding by a mere preponderance of the evi-
dence. State v. Gore, 143 Wash.2d 288, 21 P.3d 262 (Wash. 2001);
Wash. Rev. Code. Ann. Sec. 9.94A.370(2).

        In invalidating Mr. Blakely's exceptional sentence, the
Supreme Court initially observed:

        [T]he "statutory maximum" for Apprendi purposes

> is the maximum sentence a judge may impose <u>solely</u>
> <u>on the basis of the facts reflected in the jury</u>
> <u>verdict or admitted by the defendant</u>.  [Citations
> omitted.]  In other words, the relevant "statutory
> maximum" is not the maximum sentence a judge may
> impose after finding additional facts, but the
> maximum he may impose <u>without</u> any additional facts.

<u>Id</u>.  at 303-304; emphasis in original.

Applying this principle, the Court found that the statutory maximum

sentence based solely on the facts defendant admitted in his guilty

plea was the standard range of 49 to 53 months; the judge was pro-

hibited from imposing the exceptional 90-month sentence on those

facts alone.  The imposition of the 90-month exceptional sentence

under Washington's sentencing scheme therefore violated defendant's

Sixth Amendment right to trial by jury.  <u>Id</u>. at 305.  <u>Cunningham</u>

followed suit and found California's DSL violated the Sixth Amend-

ment and the Due Process Clause much the same as Mr. Blakely's con-

stitutional violations had.

In <u>United States v. Booker</u>, the Supreme Court reaffirmed the

bright-line rule of <u>Blakely</u> and <u>Apprendi</u>, which has now been reaf-

firmed in California with the <u>Cunningham</u> decision.  <u>Booker</u> invali-

dated the Federal Sentencing Guidelines to the extent that they per-

mitted Judges, based on their own factfinding, to impose sentences

greater than those authorized by the jury's verdict.  <u>See</u> 543 U.S.

at 243-244.  During a sentencing hearing, the Judge found by a pre-

ponderance of the evidence that defendant possessed an additional

566 grams of crack cocaine and had obstructed justice.  Under the

Guidelines, these additional findings by the Judge compelled the

Judge to sentence defendant to an enhanced prison term of 360 months.

26

In concluding that this sentencing procedure violated defendant's
Sixth Amendment right to a jury trial, this Court found "no relevant
distinction between the sentence imposed pursuant to the Washington
statutes in <u>Blakely</u> and the sentence imposed pursuant to the Fede-
ral Sentencing Guidelines in [this] case[.]." <u>Id</u>. at 235.   "The jury
never heard any evidence of the additional drug quantity, and the
Judge found it true by a preponderance of the evidence.   Thus, just
as in <u>Blakely</u> [and now <u>Cunningham</u>], 'the jury's verdict alone does
not authorize the sentence.   The judge alone acquires that authority
only upon finding some additional fact.'" <u>Ibid</u>.   In <u>Booker</u> it was
clarified that the Guidelines being used in such a manner were uncon-
stitutional, and the Guidelines, which were mandatory, were rendered
advisory.

> **B.   The Determinate Sentencing Law's Procedure
> For Imposing An Upper Term Violates Peti-
> tioner's Sixth Amendment Right To A Jury
> trial**

The procedure for imposing an upper term sentence under Cal-
ifornia's DSL infringes on defendants' Sixth Amendment right to a
jury trial.   Under the DSL, when a defendant is convicted of a felony
offense which specifies three possible terms—a lower, middle,
and upper term—the sentencing judge <u>must</u> impose the middle term
unless the Judge finds aggravating or mitigating factors.   Cal. Pen.
Code Sec. 1170(b); Cal. Rules Ct., Rule 4.420(a).   Thus, the middle
term is the presumptive sentence.   <u>Black</u>, 35 Cal.4th at 1257.   Be-
cause the middle term is the maximum term a Judge may impose solely
on the basis of the facts reflected in the jury's verdict or admitted
by the defendant, it also constitutes the "statutory maximum" for

Cunningham, Blakely, Apprendi, and the present Petitioner's pur-
poses.  See Blakely, 542 U.S. at 303-04.

An upward deviation from the DSL's statutory maximum sen-
tence operates exactly like an upward deviation under Washington's
flawed sentencing law in Blakely that has been found unconstitu-
tional in Cunningham.  The DSL permits Judges to impose an excep-
tional sentence only where they find aggravating circumstances
justifying an upper term (or consecutive sentence); the imposition
of an upper term in the absence of such aggravators requires rever-
sal.  § 1170(b); Cal. Rules Ct. (CRC), Rule 4.420(a) & (b); and
Black, 35 Cal.4th at 1217; see also People v. Simon, 208 Cal.App.
3d 841, 852 (1989).  The DSL allows Judges to find aggravating cir-
cumstances by a mere preponderance of the evidence  (CRC, Rule
4.420(b)), and allows imposition of consecutive sentences upon
facts related to crimes on a preponderance of the evidence (CRC,
Rule 4.425).  It provides Judges with an illustrative list of ag-
gravating factors from which to choose. (CRC, Rule 4.408(a) and
4.421.)  Finally, it prohibits Judges from imposing the upper term
based on aggravating factors which are elements of the crime  or
facts found true and used to enhance a sentence.  § 1170(b); and
CRC, Rule 4.420(c) and (d).  As in Cunningham and Blakely, then,
the DSL violates defendants' jury trial right  by allowing Judges
to impose a sentence beyond the statutory maximum — middle term
— based on factual findings unsupported by the jury's verdict
and never found true by a jury beyond a reasonable doubt.  Blakely,
542 U.S. at 304-05; Cunningham, 126 S.Ct. 856-57.

28

Under California Penal Code (PC) §459 (Burglary), Petitioner was subject to a sentencing range of 2, 4, or 6 years in state prison. The enhancement pursuant to section 667 subdivision (a)(1) penalized petitioner an additional 5 years of imprisonment which was never submitted to the jury. Here, the prosecution did not charge petitioner with upper term aggravating factors, and did not make efforts to secure the jury determination of these factors. The additional enhancement under section 667 subdivision (a)(1) subjected petitioner to punishment not reflected in the jury's verdict. The same is true regarding the aggravating factors in this case used to impose sentences aggravating petitioner's sentence to 19 years and 8 months. Pursuant to Cunningham, Blakely, and Apprendi, the middle term of 4 years aggregate under the DSL is the "statutory maximum" sentence that a Judge may impose for these offenses "solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." Blakely, 542 U.S. at 303 (emphasis in original).

Without the benefit of additional jury factfinding, the Judge in this case found aggravating factors to enhance Petitioner's sentence and impose consecutive sentences based upon which he departed from the statutory maximum of 4 years ( for burglary) and sentenced Petitioner to 12 years above the facts reflected in the jury's verdict. In doing so, the Judge necessarily found the existence of facts beyond those inherent in the jury's verdict. (See CRC, Rule 4.420(d), e.g. (prohibiting Judges from imposing upper terms based on aggravating factors which are elements of the crime.) Indeed the Judge could impose no more than 4 years here, just as the Judge in Cunningham could not impose an upper term with additional years of enhancements on facts not found by a jury beyond a reasonable doubt. This violates Petitioner's right to trial by jury and enhances the sentence beyond the verdict. Yet, as

the aforementioned cases make clear, such judicial factfinding of aggravating factors to justify the imposition of a sentence greater than the statutory maximum authorized by the jury's verdict runs afoul of the Sixth Amendment right to a jury trial. Blakely, 542 U.S. at 305; Ring, 536 U.S. at 589; Apprendi, 530 U.S. at 490-492; and Cunningham, 549 U.S. ___, Slip Op., p.16.

As the Supreme Court also explained in Apprendi, 530 U.S. at 476, justice is not served when a State metes out punishment without providing adequate procedural safeguards, including the right to a jury trial:

> New Jersey threatened Apprendi with certain pains if he unlawfully possessed a weapon and with additional pains if he selected his victims because of their race. As a matter of simple justice, it seems obvious that the procedural safeguards designed to protect Apprendi from unwarranted pains should apply equally to the two acts that New Jersey has singled out for punishment. Merely using the label "sentencing enhancement" to describe the latter surely does not provide a principled basis for treating them differently.

California threatened Petitioner with certain pains if he violated the provisions he did, and certain additional pains if he committed other aggravating acts. Whereas California fulfilled its obligation to afford Petitioner procedural safeguards regarding the charged offenses and a trial, it failed in its constitutional duty to furnish him the very same safeguards relating to whether he committed the aggravating acts which subjected him to fifteen years and eight months of additional punishment in a California State prison.

In sum, as the Court concluded in Blakely:

> The Framers would not have thought it too much to demand that, before deprivng a man of [15 years and 8 months]

30

> more years of his liberty, the State should
> suffer the modest inconvenience of submitting
> its accusation to "the unanimous suffrage of
> twelve of his equals and neighbours," [Cita-
> tion omitted]; rather than a lone employee of
> the State. 542 U.S. at 313-14.

The 19-year and 8-month sentence for Petitioner's offenses in this case violated Petitioner's Sixth Amendment right to a jury determination of every fact which increases the Petitioner's penalty beyond the statutory maximum.

> **C. The Determinate Sentencing Law's Proce-
> dure for Imposing An Upper Term Violates
> Petitioner's Due Process Right to Proof
> Beyond a Reasonable Doubt, As Does the
> Procedure for Imposing Consecutive
> Sentences Under the DSL.**

The DSL's procedure for imposing an upper term also violates defendants' right under the Due Process Clause to proof of every element of the charged crime beyond a reasonable doubt. United States v. Gaudin, 515 U.S. 506, 509-510 (1995); and Mullaney v. Wilbur, 421 U.S. 684, 698 (1975).

> The reasonable-doubt standard plays a vital role
> in the American scheme of criminal procedure. It
> is a prime instrument for reducing the risk of
> convictions resting on factual error. The standard
> provides concrete substance for the presumption
> of innocence — that bedrock "axiomatic amd elemen-
> tary" principle whose "enforcement lies at the
> foundation of the administration of our criminal
> law." [Citation omitted.] . . . ."[A] person accused
> of a crime . . . would be at a severe disadvantage,
> a disadvantage amounting to a lack of fundamental
> fairness, if he could be adjudged guilty and im-
> prisoned for years on the strength of the same evi-
> dence as would suffice in a civil case." [Cita-
> tion omitted.]

> In re Winship, 397 U.S. 358, 363 (1970); see also
> Addington v. Texas, 441 U.S. 418, 423 (1979) ("the
> interests of the (criminal) defendant are of such
> magnitude that historically . . . they have been
> protected by standards of proof designed to exclude

as nearly as possible the likelihood of an erroneous judgment.").

Where proof of a particular fact exposes the defendant to greater punishment than that available in the absence of such proof, that fact is an element of the crime which must be proven beyond a reasonable doubt. <u>Apprendi</u>, 530 U.S. at 490.

California's DSL directs Judges to determine the existence of aggravating factors for purposes of imposing punishment above and beyond the presumptive term authorized by the jury's verdict. Although the jury renders its verdict on the <u>charged</u> offenses beyond a reasonable doubt, the DSL allows Judges to find aggravating circumstances by a mere preponderance of the evidence. CRC, Rule 4.420(b). Thus, the accused "routinely see[s] his maximum potential balloon . . . based not on facts proved to his peers beyond a reasonable doubt, but on facts extracted after trial from a report compiled by a probation officer who the judge thinks more likely got it right than got it wrong." <u>Blakely</u>, 542 U.S. at 311-312. As shown in this case, the Judge clearly went above the middle term or the statutory maximum after finding factors in aggravation by only a preponderance of the evidence. This violated Petitioner's due process right to proof beyond a reasonable doubt.

D. **<u>Cunningham</u> Has Now Clarified That The California Supreme Court Has Misinterpreted The United States Supreme Court's Precedents In Finding The DSL Constitutional.**

Prior to the clarification set forth in <u>Cunningham</u>, the California Supreme Court repeatedly misinterpreted the holdings of the United States Supreme Court and held that the application of

the DSL regarding aggravating or enhancing sentences was constitu-
tional.  That claim can no longer be maintained.  Cunningham  set
forth the bright-line rule clarified in Apprendi that was crossed
in this case.  The United States Supreme Court has repeatedly  re-
jected the precise arguments the California Supreme Court set forth
in Black in defense of the DSL's constitutionality, and the decision
in Cunningham makes this position crystal clear.

In Black, 35 Cal.4th at 1257, the California Supreme Court
conceded that the mandatory language of California Penal Code Sec.
1170(b)—compelling judges to impose the middle term unless there
are cirumstances in aggravation or mitigation—"can be characterized
as establishing the middle term sentence as a presumptive sentence
. . . ."  Nevertheless, the Court decided that the upper term consti-
tutes the "statutory maximum" for purposes of Sixth Amendment analy-
sis because California Judges retain discretion over whether to im-
pose the upper term even after finding factors in aggravation.

The California Supreme Court in Black has failed to adhere
to the Supreme Court's oft-repeated bright-line rule that any judi-
cial factfinding which increases a sentence beyond the maximum auth-
orized by the jury's verdict or the defendant's admissions violates
the Sixth Amendment.  See, e.g., Booker, 543 U.S. at 232;  Blakely,
542 U.S. at 303, 308 (referencing "Apprendi's bright-line rule");
Cunningham, Slip. Op. 16;  Ring, 536 U.S. at 602; and Apprendi, 530
U.S. at 483.  The Black Court actually insisted that the Supreme
Court's "precedents do not draw a bright line . . . . "  35 Cal.4th
at 1260.

Critical to the California Supreme Court's holding in Black

was that the DSL does not restrict the aggravating factors a senten-

cing Judge may consider in imposing the upper term:

> More significantly, the availability of upper
> term sentences under the determinate sentencing
> law does not represent a legislative effort to
> shift the proof of particular facts from elements
> of a crime [to be proved to a jury] to sentencing
> factors [to be decided by a judge].  The Legisla-
> ture did not identify all of the particular facts
> that could justify the upper term.  Instead, it
> afforded the sentencing judge the discretion to
> decide, with the guidance of rules and statutes,
> whether the facts of the case and the history of
> the defendant justify the higher sentence.  Such
> a system does not diminish the traditional power
> of the jury.  35 Cal.4th at 1256.

The <u>Blakely</u> majority repudiated this very rationale when the

State of Washington raised it in that case.  542 U.S. at 305.  Thus,

merely because California's list of aggravating factors is illustra-

tive does not somehow exempt the DSL from the rule that, other than

the fact of a prior conviction, <u>any fact</u>—whether enumerated or un-

enumerated—that increases the penalty for a crime beyond the pre-

scribed statutory maximum must be submitted to a jury and proved

beyond a reasonable doubt.  <u>Apprendi</u>, 530 U.S. at 490.  A sentencing

Judge will violate this constitutionally-based rule when it imposes

a sentence beyond the statutory maximum authorized by the jury's

verdict by finding one or more factors in aggravation, whether spec-

ifically listed in California Rules of Court, Rule 4.421 or not.

    <u>Blakely</u>, followed by <u>Cunningham</u>, also found no support for

the idea—advanced by the dissenters in <u>Blakely</u> and embraced by the

California Supreme Court in <u>Black</u>, 35 Cal.4th at 1258—that judi-

cial  factfinding of the kind which occurs under the DSL "tradi-

tionally has been a part of the sentencing process." Blakely, 542 U.S. at 301-02 and n.6.

Cunningham held that "[t]he DSL, by placing sentence-elevating factfinding within the judge's province, violates a defendant's right to trial by jury safeguarded by the Sixth and Fourteenth Amendments." Slip Op., p.1. Contrary to the California Supreme Court's holding in Black, the United States Supreme Court's decisions from Apprendi to Cunningham point to the middle term specified in California statutes, not the upper term, as the relevant statutory maximum. Id. at 21.

In the instant case, the statutory maximum on the facts found by a jury beyond a reasonable doubt for the offenses Petitioner was found guilty of by a jury beyond a reasonable doubt is 4 years. The Judge made further findings of fact under the preponderance of the evidence standard set forth in the California Rules of Court causing Petitioner's sentence to balloon to an aggregate sentence of 19 years and 8 months. This should not stand, as it violates the United States Constitution.

## II. IMPOSITION OF CONSECUTIVE SENTENCES BY THE JUDGE IN THIS CASE ALSO VIOLATES CUNNINGHAM

### A. Introduction

Petitioner incorporates the argument set forth above regarding the unconstitutionality of aggravating sentences under the DSL under the preponderance of the evidence standard by a Judge. Petitioner asserts that the decisions by the United States Supreme Court in Apprendi and Blakely preclude the imposition of consecutive

sentences absent a jury finding of extrinsic facts beyond a reasonable doubt, and the language of California Penal Code (PC) § 669 indicated that <u>concurrent</u> sentencing was the presumptive term and the language of <u>Apprendi</u> and <u>Blakely</u>, which defined the maximum term as that permitted by the jury verdict alone, constrained a trial court's discretion to impose consecutive sentences.  In fact, absent a jury finding, a Court has no discretion to impose consecutive sentences.  The United States Supreme Court's recent decision in <u>Cunningham</u> has strengthened those arguments.

## B.   The Holding in <u>Cunningham</u>

The United States Supreme Court struck down California's Determinate Sentencing Law and found that the midterm was the relevant statutory maximum because the aggravating facts necessary to impose the upper term "depend on facts found discretely and solely by the judge." <u>Cunningham</u>, 127 S.Ct. at 873.  The <u>Cunningham</u> Court disapproved the California Supreme Court's opinion in <u>People v. Black</u>, 35 Cal.4th 1238 (2005) and held that neither:  (1) a trial court's broad discretion to determine what facts may support an enhanced sentence; (2) the benefits that criminal defendants may receive under California's Determinate Sentencing Law [DSL]; nor (3) a defendant's right to a jury trial on statutory enhancements shielded the DSL from constitutional scrutiny.  <u>Cunningham</u>, at 869.  Further, the <u>Cunningham</u> Court found that California's DSL was unconstitutional and infringed on a criminal defendant's Sixth and Fourteenth Amendments right to a trial by jury because it permitted a judge to impose a sentence in excess of the statutory maximum based on a fact, other than a prior conviction, that was not found

36

by a jury beyond a reasonable doubt nor admitted by the defendant. Id. at 860, 871.

Because Cunningham was sentenced to the upper term for his offense without the requisite jury determination of aggravating factors, the High Court reversed the judgment of the California Court of Appeal in part, and directed California to alter its sentencing scheme in a manner that respects the federal Constitution. Cunningham, at 870-71.  The Cunningham Court did not consider how its precedent affected consecutive sentencing directly, but it is clear that its holdings must be held to the same regarding consecutive sentencing under the DSL in California in order to comply with the clear mandates of the Fifth, Sixth and Fourteenth Amendments to the United States Constitution.

> **C.  The United States Supreme Court's Holding In Cunningham Supports Petitioner's Position That He Was Entitled To Have The Jury Find Beyond A Reasonable Doubt Aggravating Facts That Subjected Him To The Imposition Of Consecutive Terms**

Petitioner contends that the same considerations that rendered California's Penal Code (PC) § 1170(b) unconstitutional apply to consecutive sentencing (PC §§ 669 and 1168) as well.  As previously discussed, the presumptive sentencing in California is a concurrent term followed by parole.  The legislative history of Penal Code § 669 indicates a legislative preference for a concurrent term.  Furthermore, sentencing a defendant to concurrent terms is not an act of grace.  Rather, a consecutive sentence is an enhancement that requires a statement of reasons.  People v. Torres, 188 Cal.App.3d 723, 736 (1987);  People v. Lewis, 229 Cal.

App.3d 259, 267 (1991).

As discussed, _supra_, under the definition of the maximum term as set forth in _Blakely_ and its progeny, a concurrent sentence is the statutory maximum to which a defendant may be sentenced for multiple counts because a trial court has **no discretion** to impose a consecutive term absent a finding of extrinsic facts.   PC § 1170 (c); CRC, Rule 406(a); _People v. Tran_, 47 Cal.App.4th 759, 774 (1996).   Accordingly, _Cunningham_ affects the imposition of consecutive sentencing as well as the imposition of the aggravated term.

Petitioner is aware that recent California Court of Appeal decisions have attempted to usurp the _Cunningham_ logic and have found that _Cunningham_ does not apply to consecutive sentences.   The flaw with this reasoning is that _Cunningham_ applies to _every_ sentence that involves the imposition of a longer sentence on facts not found by a jury, regardless of the title of the enhancement. For example, in _People v. Hernandez_, 2007 Cal.App. LEXIS 257, filed 26 February 2007, the Third District Court of Appeal concluded that _Cunningham_ did not apply to consecutive sentences, because neither PC § 669, nor the requirement that a trial court state reasons for imposing a consecutive sentence "create[s] a presumption or other entitlement to concurrent sentencing." _Hernandez_, *5.   Reaching this conclusion, the _Hernandez_ Court stated, "In this state, every person who commits multiple crimes knows he or she is risking consecutive sentencing." _Id_. at *6.

The problem with this conclusion, following _Apprendi_, _Blakely_, and _Cunningham_, a criminal offender knows that he or she risks an aggravated or consecutive sentence _if the jury finds facts_, extrinsic

to its verdict, that subjects him or her to these terms because the maximum term authorized by statute is that supported solely by the jury verdict. As the High Court noted in Blakely, "Whether the judge's authority to impose an enhanced sentence depends on a specified fact (as in Apprendi), one of several specified facts (as in Ring [v. Arizona, 536 U.S. 584 (2002)]), or any aggravating fact, it remains the case that the jury's verdict alone does not authorize the sentence." Blakely, 542 U.S. at 305; emphasis in the original.

Consequently, the Hernandez Court's reasoning is faulty, as it still allows California Courts to violate the United States Constitution when imposing a consecutive sentence on factors found that are extrinsic to the findings of a jury or trier of fact that are based on a preponderance of the evidence. This Court should disapprove such an argument.

Since it decided Apprendi, the United States Supreme Court has held over and over that the maximum term to which a criminal defendant may be  sentenced is that authorized by the jury verdict alone. Apprendi and Blakely ensure "that the judge's authority to sentence derives wholly from the jury's verdict. Without that re-striction, the jury would not exercise the control that the Framers intended." Blakely, 124 S.Ct. 2531, 2539. Just as the United States Supreme Court held in Cunningham that California's DSL of-fended the Constitution because it permitted the use of extra-judi-cial facts to sentence a defendant to the upper term, this Court should respect Apprendi and its progeny and hold that Cunningham applies to consecutive sentencing.

//

//                                    39

V

INEFFECTIVE ASSISTANCE OF COUNSEL FAILING TO INVESTIGATE EVIDENCE
WHICH DEFRAUDED THE JURY RESULTING IN AN UNFAIR AND UNRELIABLE OUTCOME
VIOLATING PETITIONER'S SIXTH AND FOURTEENTH AMENDMENTS OF THE
UNITED STATES CONSTITUTION AND FEDERAL RIGHT TO DUE PROCESS AND A FAIR TRIAL

## PRELIMINARY STATEMENT

**INEFFECTIVE ASSISTANCE OF COUNSEL FAILING TO INVESTIGATE EVIDENCE WHICH DEFRAUDED THE JURY RESULTING IN AN UNFAIR AND UNRELIABLE OUTCOME VIOLATING PETITIONER'S SIXTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION AND FEDERAL RIGHT TO DUE PROCESS AND A FAIR TRIAL**

This case involves the following key witnesses: Debra Keith, Donna Padasdoa, and her husband (John Fawcett). These witnesses committed fraud by tampering with a crime scene depicted to the jury. Petitioner has submitted copies of photographs shown to the jury at his trial (See Exhibits A, B, C). These pictures consistently remain an illustration to testimony and are photographs of the same room [ 4 RT 231-232].

Counsel failed to investigate evidence obtained in this case resulting in an unfair and unreliable outcome. This contradicting evidence was prejudicial and such evidence was subject to investigation. Petitioner cautions this court to carefully scrutinize this evidence and has high-lighted objects in each exhibit to show that these photographs are pictures of the **same room** .

The trial record shows that these witnesses were at this crime scene 54 minutes prior to police arrival [ 4 RT 173 - 174]. At trial a witness (John Fawcett) testified photographing this crime scene [3 RT 140-141 lines 25-28].
[1] Although not recorded in the reporter's transcript, Donna Padasdoa did testify that her husband (John Fawcett) took pictures and gave them to the police. The Officer's report establishes that both polaroid and 35mm pictures were taken and submitted (Exhibit "D").

It is relevant that this court be informed that in 1996 petitioner served time in prison involving a domestic incident with Debra Keith, who was a witness

[1] [8A RT 556 lines 22-28]

in this case, and that Donna Padasdoa and her husband (John Fawcett) are close friends with Ms. Keith. At the 1996 sentencing hearing this witness (Debra Keith) was declared a liar by the sentencing judge and escorted out of the courtroom [2 RT 62-64] (Exhibit "E"). This court must consider the totality of this case and history herein including the fact that these witnesses are close friends and were at the crime scene for a substantial amount of time prior to police arrival [3 RT 106] [3 RT 136] [4 RT 174] [4 RT 244].

At trial petitioner informed his attorney of the discrepancy in this evidence and counsel failed to investigate petitioner's concerns regarding this evidence [8A RT 558]. On 9-15-06, during a Marsden hearing, petitioner submitted these pictures to the court [8A RT 556-557] and copies were made for the record [8A RT 567]. The failure to investigate and present this evidence deprived both the jury and petitioner of factual evidence showing petitioner's actual innocence of damages claimed in this case.

For instance, Exhibit "A" clearly shows two (2) windows on the left upper corner of the photograph. One of the windows (left window) shows no damage has been done to the blinds as compared to Exhibit "B" where **both** the windows (blinds) show damage and that this entire room has been vandalized (altered).


This raises some intresting questions:


(1) Why is there more damage in Exhibits "B" and "C" as compared to Exhibit "A" of the **same room** ?

(2) How did the prosecutor obtain these contradicting pictures showing more damages to the **same room** ?

(3) Since the witness(s) and police photographed this home, Who took the photo in Exhibit "A" ? Who took the photo in Exhibit "B" ?

41

Notably, the window on the right side remains in the **"same position"** throughout these pictures in Exhibits "A" and "B". Petitioner asks this court to compare Exhibit "A" with Exhibits "B" and "C" and to note the dissimilarity of the representations of damages to the "same room".

These pictures were obtained by the prosecutor's office and given to petitioner's counsel. These photographs were taken on the **same day** and are pictures of the **same room** (Exhibit "D") [3 RT 140-141].

Counsel failed to investigate evidence submitted in this case which defrauded the jury resulting in an unreliable and unfair outcome of the trial. This evidence had a substantial and injurious effect or influence on the jury and are misrepresentations of material facts. This evidence raises questions as to the veracity of these witnesses testimony as well as how the prosecutor obtained such contradicting evidence.

Petitioner asserts that the failure to investigate or present this evidence impacted the criminal proceedings depriving him of liberty through deception of the jury violating his Federal Due Process rights to a fair trial under the Sixth and Fourteenth Amendments of the United States Constitution.

//
//
//
//
//

42

## MEMORANDUM OF POINTS AND AUTHORITIES

**INEFFECTIVE ASSISTANCE OF COUNSEL FAILING TO INVESTIGATE EVIDENCE WHICH DEFRAUDED THE JURY RESULTING IN AN UNFAIR AND UNRELIABLE OUTCOME VIOLATING PETITIONER'S SIXTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION AND FEDERAL RIGHT TO DUE PROCESS AND A FAIR TRIAL**

Petitioner is untrained at law. He is currently without any assistance of a person trained in such matters and asks this court's leave to interpret his claim accordingly. Petitioner asserts that his conviction was based upon fraud depriving him of liberty through deception of the jury. Petitioner informed counsel at trial of this fact yet counsel failed to investigate or address this contradicting evidence [8A RT 558]. Petitioner requests that an evidentiary hearing be held to address this issue.

The Sixth Amendment guarantees the right to effective assistance of counsel. A single error in some circumstances renders counsel's performance ineffective, See Murray v. Carrier, 477 U.S. 478, 496 (1986), if that error is sufficiently egregious and prejudicial. The courts are clear that failing to conduct a reasonable investigation and a showing of reasons to do so is ineffective assistance of counsel, Daniels v. Woodford, 423 F.3d 1181,1203 (9th Cir. 2005); the same failure to do adequate pre-trial investigation, Hendricks v. Vasquez, 97 F.2d 1099,1109 (9th Cir. 1992). Counsel fails when he does not impeach key witness with available evidence, Moffiet v. Kolo, 930 F.2d 116 (7th Cir. 1991), U.S. v. Tucker, F.2d 576 (9th Cir. 1983), Tomlin v. Meyers, 30 F.3d 13 (9th Cir. 1994).

Actionable fraud has a well established meaning at common law - that well settled meaning of fraud required a **misrepresentation** of material fact, Neder v. U.S., 527 U.S. at 22, citing BMW of North America Inc. v. Gore, 516 U.S. 559 (1996):

43

"The ultimate mission of the system which we rely to
protect the liberty of the accused as well as the welfare
of society is to ascertain the factual truth and to do so
in a manner that comports with due process of law defined
by our Constitutions.  This important mission is utterly
derailed by unchecked lying witnesses, or by law enforcement
officers or prosecutors who find it tactically advantageous
to turn a blind eye to the manifest potential for malevolent
disinformation"

See U.S. v. Wallach, 935 F.2d 444 (2d Cir.1999), Northern Mariana Island v.

Bowie, 243 F.3d 1109, 1114 (9th Cir. 2001).


Counsel's failure to introduce exculpatory evidence was ineffective because

reasonable performance by counsel would have created reasonable probability

of different outcome, Hart v. Gomez, 174 F.3d 1067,1073 (9th Cir. 1999). Also,

Counsel's failure to interview witnesses, conduct any research and review any

records was ineffective assistance, Groseclose v. Bell, 130 F.3d 1161,1170

(6th Cir. 1997).

In Nix v. Whiteside, 475 U.S. 157 (1986) the court held that all officers

of the court have a duty to prevent and disclose fraud upon the court and jury.

California courts have held that where the conduct on the part of the authorities

is so outrageous as to interfere with an accused's right to due process of

law, proceedings against the accused are thereby rendered improper, Boulas

v. Superior Court, 188 Cal.App. 3d at 429, People v. Wesley, (1990) 224 Cal.App.

3d 1130, 1141-42, (19858, Citing 2 Wigmore, Evidence Sec. 278 (Chadbourne Rev.

1979 at 133, Inter-state Circuit, Inc. U.S. (1939) 306 U.S. 208, 225-26.

The fact that fraud has been concealed, for however long, does not remove

the taint, and action should be taken Imbler v. Pachtman, 424 U.S. 439 at 443-

444, Chambers v. Nasco, 501 U.S. 32-46, U.S. v. Thockmartin, 98 U.S. 61-65

(1865), Mooney v. Holohan, 294 U.S. at 105, Calderon v. Thompson, 523 U.S.

44

538, (1998) Bowie, supra, 243 F.3d 1109. All of the decisions tainted with the deliberate fraud, misinformation, deception, and falsehoods are legal nullities, and are, therefore void.

Here, there can be no question that the failure to investigate this evidence resulted in an unfair and unreliable outcome of this trial. The fact that there was a conflict in this evidence and that these photographs were pictures of the "same room" was never disclosed to the jury. The jury was mislead by evidence which clearly contradicts itself. Counsel had this information and was informed by petitioner of these discrepancies yet failed to investigate and present this evidence. Instead, counsel told petitioner to be quiet [8A RT 558]. Also, counsel failed to actually address this evidence and otherwise stated that an investigator "looked at all this evidence", including the evidence petitioner presented, and that he went forward with the best evidence for a defense at trial [8A RT 564 lines 6 - 13].

Failure to present the clients only defense is improper and ineffective assistance of counsel, U.S. v. Span, 7 F.3d 1383 (9th Cir. 1996), as is presenting no defense at all U.S. v. Swanson, 943 F.2d 1070, 1074 (9th Cir. 1991). The monetary amount of damages claimed in this case contradicts itself clearly showing that there is more damage in one depiction (Exhibits "B" & "C") as compared to the other (Exhibit "A") of the "same room". This evidence should have been used to impeach witness(s) as well as question the monetary amount of damages claimed in this case. "Such false evidence corrupts the criminal justice system and makes a mockery out of it's constitutional goals and objectives" Bowie supra, 243 F.3d at 1124.

To constitute fraud upon the court the alleged misconduct must be an assault on the integrity of the Justice process which defiles the court itself. In Kougsian v. TMSL Inc. 359 F.3d 136, (9th Cir. 2004) the court held that fraud

45

upon the court is not an error by the court but a wrongful act against the court, and setting aside the judgement is proper even where the same facts were raised in a prior proceeding. In <u>Chambers v. Nasco Inc.</u>, 501 U.S. 32,44 (1991) the court held that once fraud upon the court has been raised or the facts presented, the court on it's own motion should initiate an investigation as to whether the court has been a victim of fraud.

Petitioner asserts that the failure to investigate and impeach key witness(s) with this evidence deprived him of the effective assistance of counsel resulting in an unfair and unreliable outcome of the trial. This evidence had a substantial and injurious effect or influence in determining the jury's verdict. These are misrepresentations of material facts which should have been investigated and presented at trial. This is factual evidence showing actual innocence of the damages claimed in this case. Had counsel investigated and presented this evidence no reasonable trier of fact would have found petitioner guilty of causing all these damages. This evidence raises questions as to how this room became more damaged in one depiction (Exhibits "B" & "C") as compared to the other (Exhibit "A") of the same room.

Where the prosecution deprives a defendant of liberty through deception of the court or jury, due process is violated, <u>Mooney v. Holohan</u>, 294 U.S. 103,105.

For the foregoing reasons habeas should issue as a matter of law or in the alternative petitioner requests an evidentiary hearing to address these issues.


Attachments: Exhibits

//

46

<u>JUDICIAL NOTICE</u>

Petitioner requests that this court take notice of the attached photographs, and note the illustrated reference points which are pointed out in these exhibits.

The photographs attached herein, Exhibits A, B, and C are pictures of the <u>same room</u>.

# EXHIBIT COVER PAGE:

Exhibit: _____ "_A_ " _____

Description of this exhibit:     COMPARE THIS PICTURE WITH THE PHOTOGRAPHS
IN EXHIBITS " B " & " C "

THIS IS A VIEW FROM INSIDE SPARE ROOM

[ 4 RT 231-232]

Number of pages of this exhibit: _____1_____ NOTE THE FOLLOWING:

1. BOTH WINDOWS

2. SEWING MACHINE & BASKET

3. FAN

4. ROLL OF WRAPPING PAPER " OUTSIDE "" BOX

5. FLAG

6. BOOKSHELF/BOOKS AND OTHER OBJECTS ON SHELF

JURISDICTION:  (Check only one)

_____Municipal Court

_____Superior Court

_____Appellate Court

_____State Supreme Court

_X_ United States District Court

_____United States Circuit Court

_____United States Supreme Court

_____California Department of Corrections, 602 Exhibit.

_____Other: _____

6.  BOOKSHELF/BOOKS AND OTHER OBJECTS ON SHELF

1. BOTH WINDOWS

2. SEWING MACHINE & BASKET          4.  WRAPPING PAPER " OUTSIDE " BOX

5. FLAG



3.  FAN

A VIEW FROM INSIDE SPARE ROOM

COMPARE THIS PHOTOGRAPH WITH THE PICTURES IN EXHIBITS "B" & "C"
THIS PHOTO WAS TAKEN BY WITNESS(S) PRIOR TO POLICE ARRIVAL
SEE EXHIBIT "D"  [ 3 RT 140-141]  [8A RT 556 lines 22-28]

EXHIBIT "A"

# EXHIBIT COVER PAGE:

Exhibit: _____ " B " _____

Description of this exhibit: THESE ARE TWO PHOTOS OF THE " SAME ROOM" AS
DEPICTED IN EXHIBIT "A".

1. BOTH WINDOWS          3. FAN IS MISSING                    5.    FLAG
2. SEWING MACHINE & BASKET  4. WRAPPING PAPER " INSIDE" BOX

Number of pages of this exhibit: ___2___ pages

THE FIRST PHOTO IS A CLOSE UP OF THE TWO WINDOWS IN EXHIBIT "A".
THE SECOND PHOTO IS OF THE ENTRY WAY TO THIS SPARE ROOM.
COMPARE THESE TWO PICTURES WITH EXHIBIT "A"

JURISDICTION:  (Check only one)

_____Municipal Court

_____Superior Court

_____Appellate Court

_____State Supreme Court

__X__United States District Court

_____United States Circuit Court

_____United States Supreme Court

_____California Department of Corrections, 602 Exhibit.

_____Other: _____

COMPARE THESE WINDOWS (BLINDS) WITH EXHIBIT " A "

1.  BOTH WINDOWS



THIS
WINDOW
IS IN
THE
"SAME"
POSITION
SEE
EXHIBIT "A"

See Pages
41 and 42
of
the
Petition

2.  SEWING MACHINE & BASKET ARE NOW BEHIND THE BLINDS (SEE EXHIBIT " A " )

" THE SAME TWO WINDOWS AS DEPICTED IN EXHIBIT " A " "

EXHIBIT "B"

1.  BOTH WINDOWS

4.  WRAPPING PAPER "INSIDE" BOX

2. SEWING MACHINE & BASKET
   ARE NOW BEHIND THE BLINDS

      SEE EXHIBIT "A"



6.

BOOKSHELF
IS BEHIND
THIS WALL

5. FLAG

3. FAN IS MISSING

" A VIEW FROM ENTRY WAY TO SPARE ROOM "
[ 4 RT 231-232 ]

COMPARE THIS PHOTO WITH EXHIBIT "A"

EXHIBIT "B"

# EXHIBIT COVER PAGE:

Exhibit: _____"C"_____

Description of this exhibit: THIS IS THE "SAME BOOKSHELF" AS DEPICTED IN EXHIBIT "A"
COMPARE THESE PICTURES WITH THE PHOTOGRAPH IN EXHIBIT." A "

4.  WRAPPING PAPER IS NOW "INSIDE" THE BOX

5.  FLAG      6.  BOOKSHELF/BOOKS AND OTHER OBJECTS ON SHELF ARE NOW MISSING

Number of pages of this exhibit: ___3___ pages

NOTE THE DISSIMILARITY OF THESE PHOTOGRAPHS TAKEN ON THE "SAME DAY"

THESE ARE PICTURES OF THE "SAME ROOM" TAKEN BY THE WITNESS(S) AND POLICE

SEE EXHIBIT " D "   [ 3 RT 140-141 ]

JURISDICTION:  (Check only one)

_____ Municipal Court

_____ Superior Court

_____ Appellate Court

_____ State Supreme Court

__X__ United States District Court

_____ United States Circuit Court

_____ United States Supreme Court

_____ California Department of Corrections, 602 Exhibit.

_____ Other: _____

4.  ROLL OF WRAPPING PAPER "INSIDE" BOX

5. FLAG

6. BOOKSHELF/BOOKS AND OTHER OBJECTS ON SHELF ARE MISSING

THE BOOKS WHICH HAD BEEN STACKED ON THE TOP
OF THIS SHELF ARE MISSING ALONG WITH OTHER OBJECTS



" SAME BOOKSHELF AS DEPICTED IN EXHIBIT "A" "
COMPARE THIS BOOKSHELF WITH EXHIBIT "A"

EXHIBIT "C"

5. FLAG

4.  ROLL OF WRAPPING PAPER " INSIDE " BOX

6.  BOOKSHELF / BOOKS

. SEE EXHIBIT "A"

6.



" CLOSE UP PHOTO OF "SAME BOOKSHELF" AS EXHIBIT "A"

3.  FAN IS MISSING

EXHIBIT "C"

EXHIBIT "C"

BOOKSHELF →



EXHIBIT "B"

ENTRY WAY
TO
SPARE ROOM →



THESE PICTURES ARE COPIES RECEIVED BY PETITIONER FROM HIS COUNSEL AND HAVE BEEN
ENLARGED IN EXHIBITS "B" & "C". THEY ARE PICTURES OF THE "SAME ROOM" AS THE
PHOTOGRAPH IN EXHIBIT "A". COMPARE THESE PICTURES WITH EXHIBIT "A"

# EXHIBIT COVER PAGE:

Exhibit: _____"D"_____

Description of this exhibit: POLICE REPORT ESTABLISHING THAT "BOTH" POLAROID
AND 35mm  CAMERAS WERE USED TO PHOTOGRAPH SCENE AND SUBMITTED

Number of pages of this exhibit:____2____ pages

JURISDICTION:  (Check only one)

_____Municipal Court

_____Superior Court

_____Appellate Court

_____State Supreme Court

__X__United States District Court

_____United States Circuit Court

_____United States Supreme Court

_____California Department of Corrections, 602 Exhibit.

_____Other: _____

| Continued From CRIME | San Diego Regional Officer's Report Narrative | | Incident Number 05090058245 |
|---|---|---|---|
| Page 2 of 8 | | | Case Number 05058956 |

Code Section And Description (one incident only)
PC / 273.5 / INFLICT CORPORAL INJURY ON SPOUSE/COHABITANT

Date 09/22/2005 · 09/25/2005   Day of Week THU - SUN   Time 16:00 - 16:04

Location Of Incident (Or Address): ▓▓▓▓▓▓▓▓▓   City. SAN DIEGO   District   Beat 613

Person(s) Involved: Victim ▓▓▓▓ DEBRA ANN

Suspect (If Named)
SOARES, MANUEL M

Property Tag No.(s)

## MEDICAL TREATMENT

- [ ] NONE
- [x] WILL SEEK OWN DOCTOR
- [ ] FIRST AID
- [ ] PARAMEDICS
- [ ] HOSPITAL
- [ ] REFUSED MEDICAL AID

PARAMEDICS AT SCENE: **NO**
UNIT NUMBER
PARAMEDICS NAMES (Medic Names & Id)

HOSPITAL:
ATTENDING PHYSICIAN(S):

## RELATIONSHIP BETWEEN VICTIM AND SUSPECT

- [ ] SPOUSE
- [x] COHABITANTS
- [ ] ENGAGED
- [ ] SAME SEX
- [x] DATING
- [ ] FORMER SPOUSE
- [ ] FORMER COHABITANTS
- [ ] FORMER DATING
- [ ] EMANCIPATED MINOR
- [ ] PARENTS OF CHILD FROM RELATIONSHIP

LENGTH OF RELATIONSHIP
YEAR (S) **7** MONTH (S)
IF APPLICABLE,
DATE RELATIONSHIP ENDED: **09-22-05**

PRIOR HISTORY OF DOMESTIC VIOLENCE UNDOCUMENTED? **YES**
PRIOR HISTORY OF VIOLENCE DOCUMENTED? **YES**   [ ] MINOR [x] SERIOUS
NUMBER OF PRIOR INCIDENTS: **5**
CASE NUMBER(s)
INVESTIGATING AGENCY: **SDPD**

## EVIDENCE COLLECTED (DESCRIBE ALL PHOTOGRAPHS)

PHOTOS: **YES**   If NO, Why?
FROM: (4343 VOLTAIRE STREET)   Number: **24**   TYPE: [x] 35mm [x] Polaroid
TAKEN BY: **BAKER**
- [ ] Other:

Photo's of victim's injuries: **YES**   Weapon(s) impounded: **NO**
Photo's of suspect's injuries: **NO**   Firearm(s) impounded for safety: **NO**
Weapon used during incident **NO**   PROPERTY TAG NUMBER (S):
Photo's of property damage: **YES**
Type of weapon used:

| Reporting Officer PINEDO | ID # S785 | Division W2 | Approved By | Date of Report 09/25/2005 | Time 23:34 |

Continued Y

**EXHIBIT " D "**

| Continued From:<br>CRIME | | San Diego Regional<br>Officer's Report Narrative | | Incident Number<br>05090058245 | |
|---|---|---|---|---|---|
| Page<br>7 of 8 | | | | Case Number<br>05058956 | |
| Code Section And Description (one incident only)<br>PC / 273.5 / INFLICT CORPORAL INJURY ON SPOUSE/COHABITANT | | | Date<br>09/22/2005<br>09/25/2005 | Day of Week<br>THU - SUN | Time<br>16:00 - 16:04 |
| Location Of Incident (Or Address)<br>■■■■ OCTAINE STREET | | | | City<br>SAN DIEGO | District | Beat<br>613 |
| Person(s) Involved: Victim<br>■■■■, DEBRA ANN | | | | | |
| Suspect (If Named)<br>SOARES, MANUEL M | | | | | |
| Property Tag No.(s) | | | | | |

terrorized the neighbors for years and he (Robert) even purchased a gun in case he ever went to his house to cause trouble. He also told me Manuel drives a gray Ford Ranger with CA plate 4U80722 with a silver camper shell.

## EVIDENCE:

Office Martinez #5668 took several Polaroid pictures of the scene and the victim's injuries. Officer Baker #5388 took 35mm pictures of the scene and the victim's injuries as well. I will submit these pictures to investigations.

## INJURIES:

Debra sustained several bruises on her left leg and the inner part of the left arm from Manuel forcefully grabbing her. She refused medical attention and told me she will get help on her own.

## PROPERTY DAMAGE:

Debra said she would have to write down everything she owned to find the value of it. She is uncertain how much it will cost her to fix and replace the items that were damaged.

## FOLLOW-UP:

Debra told us Manuel usually goes to his mother's house after an argument. The mother's house is located at 3324 Canon Street. While at the victims address obtaining her persoal information needed for my report, Manuel called on the phone several times. Debra asked him where he was at but he refused to disclose that information. Officer Martinez #5668, SGT Frank #2367, a K9 unit and myself went to the mother's location to see if Manuel was there. After obtaining consent from the mother to enter the house, we checked the house and were unable to locate Manuel. His mother told us he had been there about 2 hours before but left to an unknown location.

I also checked with a neighbor of Debra who resides at ■■■■■■■■■■ Street to see if he had seen or heard anything unusual. He did and gave me a statement and additional suspect information. Please see his statement.

## RELATED REPORTS:

| Reporting Officer<br>PINEDO | ID #<br>5785 | Division<br>W2 | Approved By | Date of Report<br>09/25/2005 | Time<br>23:34 |
|---|---|---|---|---|---|

Continued Y

**EXHIBIT " D "**

# EXHIBIT COVER PAGE:

Exhibit: _____"E"_____

Description of this exhibit: LETTER WRITTEN BY MS. KEITH DECLARING THAT JUDGE
THOMPSON CALLED THIS WITNESS A LIAR.  THIS LETTER PERTAINS TO PETITIONER'S
PRIOR FELONY CONVICTION

SEE [ 2 RT 62-64]

Number of pages of this exhibit: ___2___ pages

JURISDICTION:  (Check only one)

_____Municipal Court

_____Superior Court

_____Appellate Court

_____State Supreme Court

__X__United States District Court

_____United States Circuit Court

_____United States Supreme Court

_____California Department of Corrections, 602 Exhibit.

_____Other: _____

Debra A. Keith




August 22, 1996

Commission on Judicial Performance
101 Howard Street, Suite 300
San Francisco, CA 94105

Dear Sir

A matter has come before me which I feel merits your immediate attention.

On August 16th, I was subpoenaed to the sentencing of Manuel Soares (case no. SCD120044), at San Diego Municipal Court, Department 8. As I am the victim/witness in this domestic violence dispute, I was called to testify and I also made use of the opportunity to present a speech to the court on my feelings and recommendations.

Unfortunately for me, Judge John Thompson presided over the case in substitution for Judge Bernard Revak. I use the term unfortunate due to the fact that it was the most degrading experience of my life.

While court was in session, Judge Thompson felt cause to disrespect all those present by resorting to the use of profanity on numerous occasions. I personally counted at least 4, possibly 5, instances that he used the word and I quote, "Bullshit." Several juveniles were in attendance and I must say, I find no excuse for such lack of professionalism.

Once I took the stand, I testified truthfully to the questions posed to me by the defendant's attorney. Judge Thompson mentioned the statement I had made to the San Diego Police Department. As I told him, the first time I spoke to the police, I was on medication for a prior back injury, the second time I was under the effects of morphine while at UCSD Medical Center and vomiting during the interview. He then accused me of lying. I reiterated what I had stated at the preliminary hearing; that the police had misquoted portions of my statement. Judge Thompson then belligerently attempted to further discredit my testimony by saying sarcastically, "Oh, the police are always the liars."

His entire attitude towards me was discourteous and openly hostile. Deputy district attorney Daniel Goldstein laughed throughout my testimony and the speech I made in closing. At no time was he admonished by Judge Thompson for this questionable conduct. (I have enclosed a copy of the letter that I have sent to Paul Pfingst, District Attorney, of and for the county of San Diego, apprising him of Mr. Goldstein's behavior).

SEE [ 2 RT 62-64 ]

  EXHIBIT "E"

Following my speech, Judge Thompson berated me publicly by declaring that I was a "liar" and promptly had me removed from his courtroom by the bailiff.

I find these actions completely intolerable. Especially coming from one with such power and presence in the community as a judge. Just as we the public offer our respect while in a courtroom, we are entitled to be respected.

Never in my life have I been treated in such a manner. I am the victim of a crime. I admitted to my participation and that in itself takes a tremendous amount of courage and conscience to do so. To this day, I question if judges prefer witnesses that cling to their self-proclaimed innocence; remaining in denial and shielded by the law. It certainly appears so in this case. The seriousness of domestic violence is not diminished by Judge Thompson's tirades. However, it does lead one to wonder how such a crime can ever be resolved without the parties involved truthfully admitting to their actions.

I was a major influence in the defendant's change of plea to guilty. It was my intention for the both of us to be self-accountable and submit intelligent solutions for rehabilitation, which we had agreed upon in full.

Judge Thompson sneered that the defendant and I "deserved each other" and, had it been in his power to see to it that we would remain together for eternity, he would consider probation. The implication in his statement was that I am a woman deserving of abuse, if such a personality type exists. To be a victim of abuse, only to suffer further indignities at the hand of California's judicial system is reprehensible.

Although it was not recorded in the transcript at the preliminary hearing, on May 16th, Judge Frank Brown made a severely blasphemous statement that, "You can sprinkle holy water on a turkey, but it's still going to be a turkey." This was uttered in reference to the defendant. I find this extremely insulting and disgraceful as I am Catholic. My father was laid to rest in a Catholic cemetary. I was not aware that those of us who practice Catholicism were of a lower caste in society, deserving to be the butt of a sick attempt at humor.

Therefore, I have been left with no choice but to alert the proper authorities of this unethical behavior with hope that the proper measures be taken.

Please give serious consideration to these issues I have mentioned. I look forward to hearing from you soon.

Sincerely

Debra A. Keith

Debra A. Keith

enc

SEE [ 2 RT 62-64]

 EXHIBIT "E"

# EXHIBIT COVER PAGE:

Exhibit: _____"F"_____

Description of this exhibit:   EXHAUSTATION OF STATE COURT REMDIES

Number of pages of this exhibit: ___**8**___ pages

JURISDICTION:  (Check only one)

_____Municipal Court

_____Superior Court

_____Appellate Court

_____State Supreme Court

__X_ United States District Court

_____United States Circuit Court

_____United States Supreme Court

_____California Department of Corrections, 602 Exhibit.

_____Other: _____

F I L E D
Clerk of the Superior Court

AUG 1 7 2007

By C. TARAS, Deputy

THE SUPERIOR COURT OF THE STATE OF CALIFORNIA
IN AND FOR THE COUNTY OF SAN DIEGO

| | |
|---|---|
| IN THE MATTER OF THE APPLICATION OF: | HC 15216 |
| MANUEL M. SOARES, | SCD193952 |
| Petitioner. | ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS |

AFTER REVIEWING THE PETITION FOR WRIT OF HABEAS CORPUS AND THE COURT FILE IN THE ABOVE-REFERENCED MATTER, THE COURT FINDS AS FOLLOWS:

On July 12, 2006 a jury convicted Petitioner of corporal injury to a spouse (Penal Code § 273.5(a)), residential burglary (Penal Code §§ 459/460), vandalism over $400.00 (Penal Code § 594(a)(b)(1)), attempting to make a criminal threat (Penal Code §§ 664/422). The jury also found true a five year sentence enhancement (Penal Code §§ 667(a)/1192.7(c)).

Petitioner filed a notice of appeal on September 29, 2006. Petitioner's appeal is currently pending before the California Court of Appeal, Fourth District, Division One. (Case No. D049480.)

Petitioner filed the instant petition for writ of habeas corpus on June 21, 2007, arguing ineffective assistance of counsel and that the prosecutor presented prejudicial evidence against him at trial. While a case is on appeal, the trial court has no jurisdiction to take action affecting the judgment. (*People v. Johnson* (1992) 3 Cal.4th 1183, 1257). "The filing of a valid notice of appeal

-1-

1  vests jurisdiction of the causes in the appellate courts until final determination of the appeal and

2  issuance of the remittitur." (*People v. Perez* (1979) 23 Cal. 3d 545, 554.)

3      Here, the Court of Appeal has yet to issue an opinion and remittitur on the respective appeal.

4  This court does not have the power to interfere with the appellate jurisdiction of a higher court in

5  matters pending before it. (*People v. Mayfield* (1993) 5 Cal. 4th 220, 225; *France v. Superior Court*

6  (1927) 201 Cal. 122, 131-32.)   Since the issues herein raised could affect the judgment in the

7  underlying case, it would be inappropriate for this court to consider this petition on the merits while

8  the appeal is pending.

9      The petition is hereby denied without prejudice.

10     A copy of this order shall be served upon 1) Petitioner; 2) Petitioner's appellate counsel,

11  Gideon Margolis P.O. Box 12376, El Cajon, Ca., 92022; 3) the California Court of Appeal, Fourth

12  District, Division One; and 4) the Office of the San Diego County District Attorney (Appellate

13  Division).

14     IT IS SO ORDERED.

15  DATED:    8/17/07

16                                    RICHARD S. WHITNEY
                                     JUDGE OF THE SUPERIOR COURT

17

18

19

20

21

22

23

24

25

26

27

28

-2-

F I L E D
Clerk of the Superior Court

DEC 2 0 2007

By: J. Walsh, Deputy

# IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

## IN AND FOR THE COUNTY OF SAN DIEGO

IN THE MATTER OF THE APPLICATION OF:  )    HC 15216
                                               )    SCD 193952

                                                 )
MANUEL SOARES,                          )    ORDER DENYING PETITION FOR WRIT
                                               )    OF HABEAS CORPUS

                  Petitioner                  )
                                                 )
                                                 )
                                                 )

      THIS COURT, HAVING READ THE PETITION FOR WRIT OF HABEAS CORPUS AND THE FILE IN THE ABOVE CAPTIONED MATTER, FINDS AS FOLLOWS:

      On July 12, 2006, a jury found Petitioner guilty of corporal injury to a spouse (Pen. Code § 273.5(a)), residential burglary (Pen. Code §§ 459/460), vandalism (Pen. Code § 594(a)(b)(1)) and attempting to make a criminal threat (Pen. Code §§ 664/422).  Petitioner admitted having a strike prior (Pen. Code § 667(b)-(i)/1170.12), a serious felony prior (Pen. Code § 667(a)) and a prison prior (Pen. Code § 667.5(b)).  On September 15, 2006, the court sentenced Petitioner to a total unstayed term of 19 years, eight months in prison as follows: the upper term of six years for burglary, doubled to 12 years because of the prior strike; one-third the middle term of three years (one year) for the corporal injury, doubled to two years because of the prior strike; one-third the

1   middle term of one year (four months) for the attempted criminal threat, doubled to eight months

2   because of the prior strike; and five years for the serious felony prior.

3          In the instant petition for writ of habeas corpus, filed October 29, 2007, Petitioner argues:

4   (1) the court erred in admitting evidence of prior acts pursuant to Evidence Code § 1109 and

5   giving the corresponding jury instruction (CALCRIM 852[1]); (2) the court's imposition of the

6   upper term and consecutive sentences violates his rights as stated in *Cunningham v. California*

7   (2007) 549 U.S. __, 127 S.Ct. 856, 166 L.Ed.2d 856 (*Cunningham*); (3) he received ineffective

8   assistance of counsel because his attorney failed to investigate whether prosecution witnesses

9   tampered with the crime scene; and (4) fraud, in that the crime scene was tampered with.

10         Petitioner's first claim is procedurally barred because it could have been raised on appeal.

11  Generally, matters that could have been but were not raised on appeal are not cognizable on

12  habeas corpus in the absence of special circumstances. (*In re Clark* (1993) 5 Cal.4th 750, 765,

13  citing *In re Dixon* (1953) 41 Cal.2d 756, 759.)  Petitioner gives this court no special reason to

14  deviate from the general rule.

15         Petitioner's second claim is also procedurally barred because his claim of sentencing

16  error under the *Cunningham* line of cases was already addressed and rejected on appeal. (See

17  Court of Appeal, 4th Dist., Div. 1, unpub. opn. D049480.) Generally, matters that were raised and

18  rejected on appeal are not cognizable on state habeas corpus in the absence of special

19  circumstances. (*In re Harris* (1993) 5 Cal.4th 813, 825; *In re Waltreus* (1965) 62 Cal.2d 218,

20  225.) Petitioner offers no reason to deviate from this general rule.

21         As for Petitioner's third and fourth claims, Petitioner submitted photocopies of pictures

22  allegedly taken of the crime scene.  However, the court is unable to draw any conclusions about

23  the photocopies because they are not clear.  Furthermore, Petitioner did not provide the court

24  with any transcript pages covering testimony about the crime scene so that the court could put

25  the pictures in context and determine what impact they might have had on the case.  Finally, it

26  appears that Petitioner wants the court to investigate the matter and answer certain questions he

27  has about the photographs.  This is not the court's job.  Without anything more than conclusory

28

1  allegations and mere speculation from Petitioner that the crime scene had been tampered with,

2  this court cannot grant Petitioner relief.

3      Based on the above, the petition is denied. Service of this Order is ordered upon (1) the

4  San Diego Office of the District Attorney, Appellate Division and (2) Petitioner.

5      IT IS SO ORDERED.

6

7  DATED:_____12|20|07_____      _____

8                          HOWARD H. SHORE
                           JUDGE OF THE SUPERIOR COURT
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

_____

1 Petitioner actually cites CALJIC 2.50.02, but the CALCRIM instructions were used in his case, not CALJIC.

COURT OF APPEAL - FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

APR 9 2008

Court of Appeal Fourth District

| | |
|---|---|
| In re MANUEL M. SOARES<br><br>on<br><br>Habeas Corpus. | D052293<br><br>(San Diego County<br>Super. Ct. No. SCD193952) |

THE COURT:

The petition for writ of habeas corpus has been read and considered by Presiding Justice McConnell and Associate Justices McDonald and Irion.  We take judicial notice of petitioner's direct appeal, No. D049480.

A jury convicted petitioner of corporal injury to a spouse, residential burglary, vandalism, and attempting to make a criminal threat.  Petitioner admitted a strike prior, a serious felony prior, and a prior prison term.  On September 15, 2006, the court sentenced petitioner to state prison for 19 years, eight months, calculated as follows: the upper term of six years for burglary, doubled to 12 years because of the prior strike; one-third the middle term of three years (one year) for corporal injury, doubled to two years because of the prior strike; one-third the middle term of one year (four months) for the attempted criminal threat, doubled to eight months because of the prior strike; and five years for the serious felony prior.  Petitioner appealed, and we affirmed the judgment on August 24, 2007, in No. D049480.

Petitioner filed the instant petition, contending the following:  (1) the trial court erred in refusing petitioner's request to instruct the jury that a person cannot be convicted of burglarizing his own home; (2) the court erred in admitting evidence of prior acts pursuant to Evidence Code section 1109 and giving the corresponding jury instructions (Judicial Council of Cal. Crim. Jury Instns. (2006-2007) CALCRIM Nos. 224, 375, 852); (3) the court's imposition of the upper term and consecutive sentences violates *Cunningham v. California* (2007) 549 U.S. ___, 127 S.Ct. 856 (*Cunningham*); and (4) ineffective assistance of counsel for failing to investigate whether prosecution witnesses tampered with the crime scene.

Petitioner's first issue, regarding the failure to instruct on burglarizing one's own home, and the third issue, alleging error under *Cunningham*, were raised and rejected on direct appeal. (See *People v. Soares* (Aug. 24, 2007, D049480) [nonpub. opn.].) These issues are therefore denied as repetitive. (*In re Clark* (1993) 5 Cal.4th 750, 765, 767-768; *In re Harris* (1993) 5 Cal.4th 813, 828-829.)

Petitioner's second issue, regarding the trial court's admission of prior acts evidence, is also procedurally barred because it could have been raised on direct appeal. (*In re Clark, supra,* 5 Cal.4th 750, 765, 767-768; *In re Harris, supra,* 5 Cal.4th 813, 829.)

Petitioner's fourth issue, although cloaked as a claim of ineffective assistance of counsel, is merely a factual attack on the testimony and evidence before the jury. Petitioner attaches several photographs that he claims demonstrate the crime scene was altered by some of the witnesses. Petitioner indicates these photos were before the jury, and he testified the crime scene did not look as it had been depicted in the photos. The jury had this evidence before it and heard petitioner's testimony, resolved whatever discrepancies may have existed, and found petitioner guilty. Petitioner may not retry the case on habeas corpus. (*In re Lindley* (1947) 29 Cal.2d 709, 723.) To the extent petitioner alleges these inconsistencies were not fully borne out at trial, petitioner may not raise those factual discrepancies here for the first time. (*Ibid.*) Moreover, although it is not this court's province to reweigh the evidence, we conclude the photographs do not establish a prima facie case that counsel was ineffective in failing to investigate how the room was photographed and whether the crime scene was altered. (See *People v. Duvall* (1995) 9 Cal.4th 464, 474-475.)

The petition is denied.

McCONNELL, P. J.

Copies to:  All parties

2

Court of Appeal, Fourth Appellate District, Div. 1 - No. D052293
**S162806**

# IN THE SUPREME COURT OF CALIFORNIA

**En Banc**

---

In re MANUEL M. SOARES on Habeas Corpus

---

The petition for review is denied.

George, C.J., was absent and did not participate.
Werdegar and Corrigan, JJ., were absent and did not participate.

SUPREME COURT
**FILED**

JUN 1 8 2008

Frederick K. Ohlrich Clerk

_____
Deputy

_____
**CHIN**
Acting Chief Justice

23. Do you have any petition or appeal **now pending** in any court, either state or federal, pertaining to the judgment under attack?
☐ Yes  ☒ No

24. If your answer to #23 is "Yes," give the following information:

   (a) Name of Court: _____

   (b) Case Number: _____

   (c) Date action filed: _____

   (d) Nature of proceeding: _____

     _____

   (e) Name(s) of judges (if known): _____

   (f) Grounds raised: _____

     _____

     _____

     _____

     _____

   (g) Did you receive an evidentiary hearing on your petition, application or motion?
     ☐ Yes  ☐ No

25. Give the name and address, if known, of each attorney who represented you in the following stages of the judgment attacked herein:

   (a) At preliminary hearing: __MARSHA DUGGINS; Address unknown__

   (b) At arraignment and plea: __Unknown__

   (c) At trial: __JAMES McMAHON; 110 West "C" St., San Diego, CA. 92101__

   (d) At sentencing: __JAMES McMAHON; 110 West "C" St., San Diego, CA. 92101__

   (e) On appeal: __GIDEON MARGOLIS; P.O. Box 12376, El Cajon, CA. 92022__

   (f) In any post-conviction proceeding: __N/A__

   (g) On appeal from any adverse ruling in a post-conviction proceeding: __N/A__

CIV 68 (Rev. Jan. 2006)

cv

26. Were you sentenced on more than one count of an indictment, or on more than one indictment, in the same court and at the same time?
☒ Yes  ☐ No

27. Do you have any future sentence to serve after you complete the sentence imposed by the judgment under attack?
☐ Yes  ☒ No

   (a) If so, give name and location of court that imposed sentence to be served in the future:

   _____

   (b) Give date and length of the future sentence: _____

   _____

   (c) Have you filed, or do you contemplate filing, any petition attacking the judgment which imposed the sentence to be served in the future?
   ☐ Yes  ☐ No

28. Consent to Magistrate Judge Jurisdiction

In order to insure the just, speedy and inexpensive determination of Section 2254 habeas cases filed in this district, the parties may waive their right to proceed before a district judge and consent to magistrate judge jurisdiction. Upon consent of all the parties under 28 U.S.C. § 636(c) to such jurisdiction, the magistrate judge will conduct all proceedings including the entry of final judgment. The parties are free to withhold consent without adverse substantive consequences.

The Court encourages parties to consent to a magistrate judge as it will likely result in an earlier resolution of this matter. If you request that a district judge be designated to decide dispositive matters, a magistrate judge will nevertheless hear and decide all non-dispositive matters and will hear and issue a recommendation to the district judge as to all dispositive matters.

You may consent to have a magistrate judge conduct any and all further proceedings in this case, including the entry of final judgment, by indicating your consent below.

Choose only one of the following:

☐ Plaintiff consents to magistrate judge jurisdiction as set forth above.

**OR**

☒ Plaintiff requests that a district judge be designated to decide dispositive matters and trial in this case.

**29.** Date you are mailing (or handing to a correctional officer) this Petition to this court: 7/13/08

Wherefore, Petitioner prays that the Court grant Petitioner relief to which he may be entitled in this proceeding.

_____

SIGNATURE OF ATTORNEY (IF ANY)

I declare under penalty of perjury that the foregoing is true and correct.  Executed on

_____7/13/08_____                    _____

(DATE)                                        SIGNATURE OF PETITIONER

## CONCLUSION

For all the foregoing reasons petitioner respectfully requests that this court grant relief accordingly as set forth in this petition and further asserts that the jury instructions given in this case and evidence submitted violated Federal Due Process to a fair trial. Alternatively, petitioner requests an evidentiary hearing addressing the evidence submitted herein exhibits A, B, C, and relief that is just and fair consistent with the United States Constitution.

Respectfully submitted,

Petitioner, pro se

<u>DECLARATION AND PROOF OF SERVICE BY MAIL</u>

I, Manuel M. Soares    , declare under the penalty of perjury that I am over the age of 18 years, ( ■ ) and not a party, or ( ✗ ) <u>am a party</u> to this action, and reside in Solano County, at P.O. Box 4000, Cell # ___204___ ) Vacaville, California. 95696-4000.

That on ___July___, __13th__, 2008 . I submitted to custody officials for inspection, sealing and depositing in the United States Mail, consistent with the "Mailbox Rule"; Houston v. Lack, 487 U.S. 266, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988) at the California State Prison-Solano, Vacaville, California. 95696-4000 a copy of the attached hereof:

      1) PETITION FOR WRIT OF HABEAS CORPUS

      2) MOTION TO PROCEED IN FORMA PAUPERIS

in a fully prepaid envelope, addressed to:

      Clerk of United States District Court, Room 4290

               880 Front Street

            San Diego, CA. 92101-8900

I declare under the penalty of perjury that the foregoing is true and correct. This declaration was executed on this 13th day, July, 2008, at CSP-Solano, Vacaville, California. 95696-4000.

_M_____

DECLARANT

JS44

(Rev. 07/89)

# CIVIL COVER SHEET

**FILED**

2254  1983

**FILING FEE PAID**

Yes ☐  No ☐

**IFP MOTION FILED**

Yes ☐  No ☐

**COPIES SENT TO**

Court ☐  ProSe ☐

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE SECOND PAGE OF THIS FORM.)

JUL 16 2008

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY ____ DEPUTY

**I (a) PLAINTIFFS**

Manuel M Soares

D K Sisto, Warden

**(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF** Solano

**(EXCEPT IN U.S. PLAINTIFF CASES)**

**COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT** ____
**(IN U.S. PLAINTIFF CASES ONLY)**

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND

**(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)**

Mauel M. Soares
PO Box 4000
Vacaville, CA 95696-4000
F-39579

**ATTORNEYS (IF KNOWN)**

'08 CV 1288 JAH NLS

**II. BASIS OF JURISDICTION (PLACE AN x IN ONE BOX ONLY)**

☐ 1 U.S. Government Plaintiff

☒ 3 Federal Question
(U.S. Government Not a Party)

☐ 2 U.S. Government Defendant

☐ 4 Diversity (Indicate Citizenship of Parties in Item III

**III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN X IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)**
(For Diversity Cases Only)

| | PT | DEF | | PT | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. CAUSE OF ACTION (CITE THE US CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY).**

### 28 U.S.C. 2254

**V. NATURE OF SUIT (PLACE AN X IN ONE BOX ONLY)**

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reappointment |
| ☐ Marine | ☐ 310 Airplane | ☐ 362 Personal Injury- Medical Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ Miller Act | ☐ 315 Airplane Product Liability | | ☐ 625 Drug Related Seizure of Property 21 USC 881 | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 365 Personal Injury - Product Liability | | ☐ 820 Copyrights | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment &Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | | ☐ 640 RR & Truck | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | ☐ 650 Airline Regs | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veterans Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities Exchange |
| ☐ 160 Stockholders Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 690 Other | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC |
| ☐ Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | **LABOR** | ☐ 863 DIWC/DIWW (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 864 SSID Title XVI | ☐ 892 Economic Stabilization Act |
| | | | ☐ 720 Labor/Mgmt. Relations | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | **FEDERAL TAX SUITS** | ☐ 894 Energy Allocation Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 740 Railway Labor Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | | ☐ 790 Other Labor Litigation | ☐ 871 IRS - Third Party 26 USC 7609 | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations | ☒ 530 General | ☐ 791 Empl. Ret. Inc. | | |
| ☐ 240 Tort to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | ☐ Security Act | | ☐ 950 Constitutionality of State |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | | | ☐ 890 Other Statutory Actions |
| ☐ 290 All Other Real Property | | ☐ 550 Civil Rights | | | |

**VI. ORIGIN (PLACE AN X IN ONE BOX ONLY)**

☒ 1 Original Proceeding  ☐ 2 Removal from State Court  ☐ 3 Remanded from Appelate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district (specify)  ☐ 6 Multidistrict Litigation  ☐ 7 Appeal to District Judge from Magistrate Judgment

**VII. REQUESTED IN COMPLAINT:** ☐ CHECK IF THIS IS A CLASS ACTION UNDER f.r.c.p. 23

DEMAND $ ____

Check YES only if demanded in complaint:

**JURY DEMAND:** ☐ YES ☒ NO

**VIII. RELATED CASE(S) IF ANY (See Instructions):** JUDGE ____  Docket Number ____

DATE 7/17/2008

SIGNATURE OF ATTORNEY OF RECORD

*M. Hammel*